2014-1122

In The

# United States Court of Appeals

## For The Federal Circuit

# BENEFIT FUNDING SYSTEMS LLC, RETIREMENT CAPITAL ACCESS MANAGEMENT COMPANY LLC,

*Plaintiffs – Appellants*,

**v.**

# ADVANCE AMERICAN CASH ADVANCE CENTERS INC., CNU ONLINE HOLDINGS, LLC, FKA CASH AMERICA NET HOLDINGS, LLC,

*Defendants – Appellees*.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
IN CASE NO. 1:12-CV-00801-LPS, JUDGE LEONARD P. STARK.**

_____

**BRIEF OF APPELLANTS**

_____

**Casey L. Griffith**
**KLEMCHUK KUBASTA LLP**
**8150 North Central Expressway, 10th Floor**
**Dallas, Texas 75206**
**(214) 367-6000 (Telephone)**
**(214) 367-6001 (Facsimile)**

*Counsel for Appellants*

*Dated: January 27, 2014*

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel of record for Plaintiffs-Appellants certifies the following follows:

1.    The full name of every party represented by us is:

Benefit Funding Systems LLC and

Retirement Capital Access Management Company LLC

2.    The names of the real parties in interest represented by us are:

Not applicable

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by us are:

None

4.    The names of all law firms and the partners or associates that appeared for the parties represented by us in the trial court, or are expected to appear in this Court, are:

Klemchuk Kubasta LLP                    Farnan LLP:

Casey L. Griffith                              Brian E. Farnan
Austin S. Champion                         Michael J. Farnan

Dated: January 27, 2014                    Respectfully submitted,

                                            /s/ Casey L. Griffith
                                            Casey L. Griffith
                                            Klemchuk Kubasta LLP
                                            8150 North Central Expressway, 10th Floor
                                            Dallas, Texas 75206
                                            (214) 367-6000 (Telephone)
                                            (214) 367-6001 (Facsimile)

                                            *Counsel for Plaintiffs-Appellants*
                                            *Benefit Funding Systems LLC, Retirement*
                                            *Capital Access Management Company LLC*

# TABLE OF AUTHORITIES

<div align="right">Page</div>

CERTIFICATE OF INTEREST ............................................................... i

TABLE OF CONTENTS ...................................................................... iii

TABLE OF AUTHORITIES ................................................................... v

STATEMENT OF RELATED CASES ............................................... viii

STATEMENT OF JURISDICTION ...................................................... 1

STATEMENT OF THE ISSUES PRESENTED ................................... 1

STATEMENT OF THE CASE
SETTING OUT THE FACTS RELEVANT TO THE ISSUES .............. 2

SUMMARY OF ARGUMENT .............................................................. 5

ARGUMENT ........................................................................................ 6

    A.    The District Court's Decision To Enter A Stay Is Entitled To No Deference ............................................................................... 6

    B.    The PTAB Lacks Statutory Authority To Cancel Any Claims Of The '582 Patent On The Basis Of Patent Eligibility Under Section 101 ............................................................................ 7

        1.    Challenges to the validity of a patent in transitional proceeding are statutorily limited to grounds "specified" in the Patent Act "as a condition for patentability" ........................ 8

        2.    The plain text and structure of the Patent Act supports the conclusion that Section 101 is not specified as a condition for patentability ............................................................ 8

<div align="center">iii</div>

3.    Defendants do not even address the fundamental issue of whether the language of the Patent Act itself specifies that Section 101 is a condition for patentability ..............................10

      (a)    The Federal Circuit "precedent" cited by Defendants is non-binding obiter dictum...........................................10

      (b)    Prior misinterpretations of the Patent Act would not justify permitting the PTAB to exceed its statutory authority ........................................................................14

      (c)    The legislative history of the AIA cannot be considered because the statutory language is unambiguous .................................................................14

C.    A Stay Under Section 18(b)(1) Of The AIA Is Improper When The Sole Basis For Institution Of A Transitional Proceeding Is Outside The PTAB's Statutory Authority .........15

CONCLUSION .........................................................................................16

ADDENDUM

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*,
543 F.3d 657 (Fed. Cir. 2008) .................................................................10, 13

*Bilski v. Kappos*,
130 S. Ct. 3218 (2010)..........................................................................12, 13

*Central Bank of Denver v. First Interstate Bank of Denver*,
511 U.S. 164 191 (1994) ...........................................................................14

*Cohens v. Virginia*,
19 U.S. 264 (1821)....................................................................................13

*Conn. Nat'l Bank v. Germain*,
503 U.S. 249 (1992)...........................................................................7, 9, 15

*Diamond v. Diehr*,
450 U.S. 175 (1982)..............................................................................11, 13

*Dongbu Steel Co., Ltd. v. United States*,
635 F.3d 1363 (Fed. Cir. 2011) ..............................................................6, 15

*Graham v. John Deere Co. of Kansas City*,
383 U.S. 1 (1966)..........................................................................10, 11, 13

*Hall v. United States*,
677 F.3d 1340 (Fed. Cir. 2012) ...............................................................6, 10

*MySpace, Inc. v. GraphOn Corp.*,
672 F.3d 1250 (Fed. Cir. 2012) ...............................................................9, 13

*Norfolk Dredging Co., Inc. v. United States*,
375 F.3d 1106 (Fed. Cir. 2004) .............................................................6, 7, 9

*Rubin v. United States*,
    449 U.S. 424 (1981)..........................................................................7

*Wright v. United States*,
    302 U.S. 583 (1938)........................................................................13

## STATUTES

15 U.S.C. § 78t(e) ...........................................................................14

28 U.S.C. § 1331 ..............................................................................1

28 U.S.C. § 1338(a) ..........................................................................1

35 U.S.C. § 100-212..........................................................................8

35 U.S.C. § 101 .........................................................................*passim*

35 U.S.C. § 102 .........................................................................*passim*

35 U.S.C. § 103 .........................................................................*passim*

35 U.S.C. § 112 ...............................................................................8

35 U.S.C. § 251 ...............................................................................8

35 U.S.C. § 282(b) ...........................................................................8

35 U.S.C. § 282(b)(2).........................................................................8

35 U.S.C. § 282(b)(3).........................................................................8

35 U.S.C. § 321(b) ...........................................................................8

## RULES

Fed. Cir. R. 47.5 ...........................................................................viii

Fed. R. App. P. 28(a)(4)......................................................................1

## OTHER AUTHORITIES

H.R. Rep. No. 1923 82d Cong., 2d Sess. (1952) .......................................................12

Leahy-Smith American Invents Act,
Pub. L. No. 112-29, 125 Stat. 284 (2011) AIA § 18(a)(1) ........................................8

Leahy-Smith American Invents Act,
Pub. L. No. 112-29, 125 Stat. 284 (2011) AIA § 18(b)..............................................6

Leahy-Smith American Invents Act,
Pub. L. No. 112-29, 125 Stat. 284 (2011) AIA § 18(b)(1) ...........................6, 15, 16

Leahy-Smith American Invents Act,
Pub. L. No. 112-29, 125 Stat. 284 (2011) AIA § 18(b)(2) .............................1, 6, 15

S. Rep. No. 1979, 82d Cong., 2d Sess., 5 (1952) .....................................................12

U.S. Code Cong. & Admin. News, 1952 ...................................................................12

# STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, appellants identify the following judicial or administrative matters that would be affected by this Court's decision in the pending appeal:

1.    *Benefit Funding Systems LLC*, *Retirement Capital Access Management Company LLC v. Regions Financial Corporation*, Case No. 14-1124 (Fed. Cir. filed November 26, 2013);

2.    *Benefit Funding Systems LLC*, *Retirement Capital Access Management Company LLC v. U.S. Bancorp*, Case No. 14-1125 (Fed. Cir. filed November 26, 2013);

3.    *Benefit Funding Systems LLC*, *et al. v. Advance America*, *Cash Advance Centers*, *Inc.*, *CNU Online Holdings*, *LLC F/K/A Cash America Net Holdings*, *LLC*, Case No. 1:12-cv-801-LPS (D. Del. filed June 22, 2012);

4.    *Benefit Funding Systems LLC*, *et al. v. Regions Financial Corporation*, Case No. 1:12-cv-802-LPS (D. Del. filed June 22, 2012); and

5.    *Benefit Funding Systems LLC*, *et al. v. U.S. Bancorp*, Case No. 1:12-cv-803-LPS (D. Del. filed June 22, 2012).

## STATEMENT OF JURISDICTION

Pursuant to Rule 28(a)(4) of the Federal Rules of Appellate Procedure, counsel for Benefit Funding Systems LLC and Retirement Capital Access Management Company LLC (collectively referred to as "Patentee") states:

1.      The District Court had subject matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2.      This Court has jurisdiction over the District Court's interlocutory oral order staying the district court litigation pursuant to Section 18(b)(2) of the Leahy-Smith American Invents Act, Pub. L. No. 112-29, 125 Stat. 284, 331 (2011).

3.      The District Court entered its order staying the district court litigation on October 25, 2013.  Patentee timely filed a notice of appeal on November 24, 2013.  (A786-787).

## STATEMENT OF THE ISSUES PRESENTED

The question presented is whether the district court erred in staying the matter pending completion of the Patent Trial and Appeal Board's covered business method review of the eligibility of the claims of U.S. Patent No. 6,625,582 for patent protection.  In resolving that question, this Court must decide:

1.      Whether 35 U.S.C. § 101 is specified in Part II of Title 35, United States Code, as a condition for patentability.

2.    Whether a transitional proceeding instituted solely on a basis outside the scope of the Patent Trial and Appeal Board's statutory authority can justify staying all patent infringement litigation involving the patent at issue in the transitional proceeding.

## STATEMENT OF THE CASE
## SETTING OUT THE FACTS RELEVANT TO THE ISSUES

In June 2012, Patentee filed a complaint alleging that Advance America, Cash Advance Centers, Inc. ("Advance America") had infringed U.S. Patent No. 6,625,582 ("the '582 Patent"). (A1-18; A41). At the same time, Patentee filed separate lawsuits against Regions Financial Corporation ("Regions") and U.S. Bancorp. While Patentee's three lawsuits were not consolidated, the district court did enter a joint scheduling order. (A30-39; A41).

Almost 10 months after the actions against Advance America, Regions, and U.S. Bancorp were commenced, U.S. Bancorp filed a petition for covered business methods review ("CBM review") with the Patent Office's Patent Trial and Appeal Board ("PTAB"), and, a few days later, filed a motion to stay the district court litigation pending resolution of its petition by the PTAB. (A41-42). Advance America did not at that time file its own petition for CBM review. It nevertheless filed a motion to stay Patentee's patent infringement claims against Advance America in view of U.S. Bancorp's petition for CBM review. (A40-48).

The district court denied Advance America's motion to stay, stating: "Under the circumstances presented here, the Court believes the proper exercise of its discretion is to maintain this case on the schedule previously ordered . . . and not delay its resolution pending the outcome of a potential administrative proceeding." (A520-521). In denying Advance America's motion to stay, the Court made the following four findings:

1. Even if the PTAB instituted review of the '582 patent on § 101 grounds, "there will be numerous issues to be litigated in Court (e.g., other invalidity defenses, equitable defenses, infringement, remedies)" after that review is completed "unless all asserted claims are invalidated." (A521).

2. "[W]hile this case is in its relatively early stages, the Court has invested resources in (today) resolving two discovery disputes and two motions, discovery has begun (and would have been more advanced but-for Defendant's resistance to discovery pendency of its motion to stay), and the CBM review is at an even earlier stage than the litigation (in part because U.S. Bancorp waited more than 10 months after suit was initiated to file its request for CBM Review)." (A521-522).

3. Patentee "will suffer some prejudice from a stay, due to loss of their chosen forum, the possibility of necessary witnesses' memories fading, and negative impact on their ability to license the patent-in-suit." (A522).

4.    "[W]hile staying the litigation would somewhat reduce the burden of litigation on the parties and the Court, in the present posture the Court is not convinced the reduction would be substantial." (*Id.*)

On July 3, 2013, Patentee amended its complaint against Advance America, adding CNU Online Holdings, LLC f/k/a Cash America Net Holdings LLC ("CNU") as an additional defendant. (A523). (Advance America, U.S. Bancorp, Regions, and CNU will collectively be referred to as "Lenders"). On September 20, 2013, the PTAB instituted a transitional proceeding on the '582 patent on the sole basis of patent eligibility under 35 U.S.C. § 101. (A579). Within a couple of weeks thereafter, Lenders filed renewed motions to stay pending resolution of that transitional proceeding. (*Id.*)

In opposition to Lenders' renewed motions to stay, Patentee asserted the same arguments that resulted in denial of Lenders' first motions to stay. (A591; A601-603). In addition, Patentee asserted that a stay is inappropriate because Section 101 is not a proper basis of CBM review. (A610-611).

The district court granted Lenders' renewed motions to stay in a bench ruling on October 25, 2013. (A764; A776). The court acknowledged that whether Section 101 is a proper basis for CBM review is relevant to whether a stay will simplify issues for trial. However, the court did not decide whether the PTAB was acting within its statutory authority. (A774).

4

## SUMMARY OF ARGUMENT

Lenders' motions to stay should have been denied because as a matter of law the PTAB's review of the '582 Patent cannot simplify this case, Patentee will be unduly prejudiced, Lenders will be presented a clear tactical advantage, and a stay will increase—not decrease—the burden of litigation. The district court's decision to stay the infringement litigation before it is entitled to no deference, and this appeal can be decided through statutory construction, which is a question of law.

In granting U.S. Bancorp's Petition for CBM Review on the sole issue of patent eligibility under 35 U.S.C. § 101, the PTAB exceeded its statutory authority. Section 101 is not specified in Part II of the Patent Act as a condition for patentability, yet only those sections "specified" by Congress as "conditions for patentability" in Part II are permissible grounds for CBM review. Accordingly, the PTAB is not authorized to resolve and cannot resolve any issues in the transitional proceeding involving the '582 Patent, which forecloses any argument that a stay of the district court litigation will simplify issues and reduce the burden of litigation. Moreover, forcing Patentee to litigate patent eligibility before the PTAB, when the PTAB is not statutorily authorized to consider that issue, is unduly burdensome for Patentee and clearly presents Lenders with a tactical advantage.

# ARGUMENT

**A.    The District Court's Decision To Enter A Stay Is Entitled To No Deference.**

Section 18(b) of the Leahy-Smith American Invents Act, Pub. L. No. 112-29 ("AIA"), 125 Stat. 284, 331 (2011), governs stays pending resolution of a transitional proceeding involving a patent asserted in a civil action alleging infringement.  Section 18(b)(1) of the AIA identifies several factors that a district court shall use in deciding whether to enter a stay.  Notably, the Federal Circuit's review of a district court's decision regarding a stay may be de novo.  *See* AIA § 18(b)(2).

At issue in this appeal is whether 35 U.S.C. § 101 is specified in Part II of Title 35, United States Code, as a condition for patentability.  Whether Section 101 is a statutorily authorized basis for CBM review obviously is a question of statutory interpretation, which is reviewed without deference.[1]  *Dongbu Steel Co., Ltd. v. United States*, 635 F.3d 1363, 1369 (Fed. Cir. 2011).    Statutory interpretation begins with the language of the statute.  *Hall v. United States*, 677 F.3d 1340, 1345 (Fed. Cir. 2012).  A court derives the plain meaning of the statute from its text and structure.  *Norfolk Dredging Co., Inc. v. United States*, 375 F.3d 1106, 1110 (Fed. Cir. 2004).  "When the words of a statute are unambiguous, then,

---

[1] Of course, as noted above, the district court refused to decide this question, so there would be no decision to which to defer anyway.

this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Id.* 253-54. It is therefore unnecessary to seek clarification in legislative history when the statutory language is unambiguous. *See Norfolk Dredging*, 375 F.3d at 1110.

### B. The PTAB Lacks Statutory Authority To Cancel Any Claims Of The '582 Patent On The Basis Of Patent Eligibility Under Section 101.

The PTAB does not have statutory authority to review the '582 Patent under 35 U.S.C. § 101 because Section 101 is not "specified" as a "condition for patentability" and is therefore not a statutorily authorized ground for instituting a transitional proceeding. Indeed, the plain text of the Patent Act supports a conclusion that Section 101 is not an acceptable ground for instituting a transitional proceeding. As a result, the PTAB lacks authority to adjudicate any rights relating to the '582 Patent on the basis of patent eligibility under Section 101, which, in turn, forecloses any argument that the PTAB's review can simplify this case, streamline trial, or reduce the burden of litigation.

1.  **Challenges to the validity of a patent in transitional proceeding are statutorily limited to grounds "specified" in the Patent Act "as a condition for patentability."**

A petitioner in a transitional proceeding "may request to cancel as unpatentable 1 or more claims of a patent on any ground that could be raised under paragraph (2) or (3) of [35 U.S.C.] 282(b)." 35 U.S.C. § 321(b); *see also* AIA § 18(a)(1). Under paragraph 2 of Section 282(b), a party may seek invalidity of a patent or any claim "on any ground **specified** in part II **as a condition for patentability**." 35 U.S.C. § 282(b)(2) (emphasis added). Paragraph 3 of Section 282(b) provides that a party may seek invalidity of a patent or any claim for failure to comply with: (a) any requirement of section 112 (excluding failure to disclose best mode); or (b) any requirement of section 251. *Id.* § 282(b)(3). Accordingly, Section 101 can constitute a basis for instituting a transitional proceeding only if it constitutes a "ground specified in part II as a condition for patentability."

2.  **The plain text and structure of the Patent Act supports the conclusion that Section 101 is not specified as a condition for patentability.**

Part II of Title 35 encompasses sections 100-212. Of numerous sections in Part II, only two are specified as a "condition for patentability." Section 102 is titled "Conditions for patentability; novelty," and Section 103 is titled, "Conditions for patentability; non-obvious subject matter." Moreover, no other section contained in Part II includes the terms "condition" and "patentability" anywhere,

either in the title or in the body. Thus, "[t]he two sections of part II that Congress has denominated as 'conditions of patentability' are § 102 ('novelty and loss of right to patent') and § 103 ('nonobvious subject matter')." *MySpace*, *Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1260 (Fed. Cir. 2012). Because Section 101 is not *specified* as a condition for patentability, it cannot form the basis of a transitional proceeding.

The substance of Sections 102 and 103 further confirm they are inarguably "conditions for patentability." Section 102 states "A person shall be entitled to a patent *unless* . . ." 35 U.S.C. § 102 (emphasis added). Section 103 states "a patent for an invention may not be obtained . . . *if* the differences" would have been obvious at the time of the invention. 35 U.S.C. § 103 (emphasis added). Section 102 conditions patentability on novelty; Section 103 conditions patentability on non-obviousness. In contrast, Section 101 permissively states that "[w]hoever invents or discovers any new and useful process… or any new and useful improvement thereof, may obtain a patent therefore," but doing so is "subject to the conditions and requirements of this title." 35 U.S.C. § 101 (emphasis added).

The plain language and structure of the Patent Act shows that Section 101 is not specified by Congress in Part II as a condition for patentability. No further construction is necessary or even permissible. *See Germain*, 503 U.S. at 254; *Norfolk Dredging*, 375 F.3d at 1110. The PTAB therefore has no authority to

institute transitional proceedings on the basis of Section 101, and it exceeded its statutory authority in doing so with respect to the '582 patent.

> **3.    Lenders do not even address the fundamental issue of whether the language of the Patent Act itself specifies that Section 101 is a condition for patentability.**

It is well settled that statutory construction begins with the language of the statute.  *See Hall*, 677 F.3d at 1345.  Yet, in their argument that Section 101 is a proper basis for CBM review, Lenders do not even address the statutory language.  Lenders instead point to non-binding dicta and irrelevant legislative history.

> **(a)    The Federal Circuit "precedent" cited by Lenders is non-binding obiter dictum.**

Lenders argue, "Supreme Court and Federal Circuit precedent squarely contradict [Patentee's] strained argument that Section 101 is not a condition of patentability."  (Dkt. 86 at pp. 5-6).  The only "precedent" cited by Lenders is *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 12 (1966), and *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 543 F.3d 657, 661 (Fed. Cir. 2008).

 The Court in *Graham* did not hold Section 101 is specified as a condition for patentability because *Graham* did not even involve considerations of patent eligibility under Section 101.  The issue in *Graham* was nonobviousness under Section 103.  Any statements in *Graham* are therefore dicta.

Moreover, in discussing Sections 101 and 102 in *Graham*, Justice Clark noted "that patentability is dependent upon three explicit conditions: novelty and

utility as articulated and defined in § 101 and § 102, and nonobviousness . . . as set out in s 103." *Graham*, 383 U.S. at 12. Taken literally, Justice Clark's statement suggests that "eligible subject matter" is *not* a condition for patentability. Further, if *Graham* stands for the proposition that utility, "eligible subject matter," novelty, and non-obviousness are all conditions for patentability, then the Court's statement that there are "three conditions"[2] makes no sense, since if "eligible subject matter" is a condition for patentability, then there are four, not three, conditions. In other words, *Graham* actually suggests that only utility from Section 101 is a condition for patentability, and it does so repeatedly.

Besides, other Supreme Court decisions actually addressing patent eligibility under Section 101 contradict the dictum[3] in *Graham*. For example, in *Diamond v. Diehr*, 450 U.S. 175 (1982), the Court stated:

> It has been urged that novelty is an appropriate consideration under § 101. Presumably this argument results from the language in § 101 referring to any "new and useful" process, machine, etc. Section 101, however, is a general statement of the type of subject matter that is eligible for patent protection "subject to the conditions and requirements of this title." Specific conditions for patentability follow and § 102 covers in detail the conditions relating to novelty. The question therefore of whether a particular invention is novel is "wholly apart from whether the invention falls into a category of statutory subject matter." *In re Bergy*, 596 F.2d 952, 961 (Cust. & Pat. App., 1979) (emphasis deleted). See also *Nikola v. Peterson*, 580

---

[2] 383 U.S. at 17.

[3] To be clear, these other Supreme Court decisions also are not binding because they do not involve a holding that Section 101 is specified in the Patent Act as a condition of patentability.

F.2d 898 (CA6 1978).  The legislative history of the 1952 Patent Act is in accord with this reasoning.  The Senate Report stated:

> "Section 101 sets forth the subject matter that can be patented, 'subject to the conditions and requirements of this title.'  The conditions under which a patent may be obtained follow, and *Section 102 covers the conditions relating to novelty*."

S. Rep. No. 1979, 82d Cong., 2d Sess., 5 (1952), U.S. Code & Admin. News, 1952, p. 2399 (emphasis supplied).

\* \* \*

Finally, it is stated in the "Revision Notes":

> "The corresponding section of [the] existing statute is split into two sections, section 101 relating to the subject matter for which patents may be obtained, and section 102 defining statutory novelty and stating other conditions for patentability."

*Id.*, at 17, U.S. Code Cong. & Admin. News, 1952, p. 2409.  See also H.R. Rep. No. 1923 82d Cong., 2d Sess., at 6, 7, and 17 (1952).

In this case, it may later be determined that the respondents' process is not deserving of patent protection because it fails to satisfy the statutory conditions of novelty under § 102 or nonobviousness under § 103.  A rejection on either of these grounds does not affect the determination that respondents' claims recited subject matter which was eligible for patent protection under § 101.

*Id.* at 189-91 (emphasis in original).  Similarly, the Court more recently stated in

*Bilski v. Kappos*, 130 S.Ct. 3218 (2010):

> The § 101 patent-eligibility inquiry is only a threshold test.  Even if an invention qualifies as a process, machine, manufacture, or composition of matter, in order to receive the Patent Act's protection the claimed invention must also satisfy "the conditions and

12

> requirements of this title." § 101. Those requirements include that
> the invention be novel, *see* § 102, nonobvious, *see* § 103, and fully
> and particularly described, *see* § 112.

*Id.* at 3225. These conflicting pronouncements[4] help explain why the Supreme

Court often counsels, "'general expressions, in every opinion, are to be taken in

connection with the case in which those expressions are used,' and that if they go

'beyond the case, they may be respected, but ought not to control the judgment in a

subsequent suit when the very point is presented for decision . . . .'" *Wright v.*

*United States*, 302 U.S. 583, 593-594 (1938) (*quoting Cohens v. Virginia*, 19 U.S.

264, 399 (1821)).

The *Aristocrat* decision cited by Lenders is no more helpful. To begin with,

it did not even involve subject matter eligibility under Section 101.[5] Any dicta

upon which Lenders presumably rely traces directly back to the dicta from

*Graham*. Additionally, loose language can be found in other Federal Circuit cases

saying exactly the opposite. For example, *Myspace, Inc. v. GraphOn Corp.*, 672

F.3d 1250, 1260-61 (Fed. Cir. 2012), states, "The two sections of part II that

Congress has denominated 'conditions of patentability' are § 102 . . . and § 103 . ."

---

[4] In *Graham* on the one hand, and in *Diehr* and *Bilski* in the other.

[5] The issue in *Aristocrat* was whether improper revival of a patent application or
patent is a defense to a civil action for patent infringement. 543 F.3d at 660-61.

**(b)** **Prior misinterpretations of the Patent Act would not justify permitting the PTAB to exceed its statutory authority.**

Of course, even if precedent purporting to show that Section 101 is specified in Part II as a condition for patentability had been more than non-binding dictum, it would have been based on misinterpretation of the plain language of the Patent Act. Long-standing statutory misinterpretation that pervades conventional thinking does not justify continuing to ignore Congressional intent as expressed in statutes. Even a long-lived statutory misinterpretation will not bar restoring the patent system to its statutory limits. *See Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 177, 191 (1994), *superseded on other grounds by* 15 U.S.C. § 78t(e) (1995) (overruling sixty years of allowance of statutory cause of action because Congress had not expressly provided for that cause of action).

**(c)** **The legislative history of the AIA cannot be considered because the statutory language is unambiguous.**

Lenders also contend that the legislative history of the AIA somehow confers authority on the PTAB to consider Section 101 challenges in transitional proceedings. (Dkt. 86 at p. 6). The text of the Patent Act is unambiguous in only specifying that Sections 102 and 103 are conditions for patentability. Legislative history, consequently, is irrelevant because "courts must presume that a legislature

14

says in a statute what it means and means in a statute what it says there." *Germain*,

503 U.S. at 253-54.

> ### C.  A Stay Under Section 18(b)(1) Of The AIA Is Improper When The Sole Basis For Institution Of A Transitional Proceeding Is Outside The PTAB's Statutory Authority.

This Court may review the district court's decision without deference.  AIA

§ 18(b)(2).    Moreover, statutory interpretation—i.e., whether Section 101 is

specified in Part II of the Patent Act as a condition for patentability—is a question

of law to be reviewed without deference.  *See*, *e.g.*, *Dongbu Steel*, 635 F.3d at

1369.  There is no dispute that Section 101 is an improper basis for CBM review

unless it is specified in Part II of the Patent Act as a condition for patentability.

Yet, the plain language and structure of the Patent Act shows that Section 101 is

not specified as a condition for patentability.    Section 101, therefore, is not a

statutorily authorized basis for CBM review.

Because Section 101 is statutorily excluded as a basis for review, as a matter

of law, no claim of the '582 patent can be invalidated in the U.S. Bancorp's CBM

review.  This forecloses any argument that a stay is proper in view of the PTAB's

decision to institute a transitional proceeding.

The factors to be considered in deciding whether to stay patent litigation

pursuant to AIA § 18(b)(1) are:  (1) whether a stay will simplify the issues in

question and streamline trial, (2) whether discovery is complete and whether a trial

date has been set, (3) whether a stay would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party, and (4) whether a stay will reduce the burden of litigation on the parties and on the court. It is evident that consideration of these factors cannot justify a stay when the sole basis for instituting a transitional proceeding is outside the PTAB's statutory authority. For example, where a patent owner is foreclosed from pursuing patent infringement claims in its chosen forum (district court) under such circumstances, prejudice to the patent owner is extreme and advantage to the accused infringer is apparent is wholly unearned. Likewise, requiring a patent owner to expend resources defending its patent before the PTAB on a statutorily unauthorized basis of review does not result in any reduction of the burden of litigation—it does the opposite.

Where, as here, a transitional proceeding was instituted on a basis outside the PTAB's statutory authority, a stay pursuant to AIA § 18(b)(1) is inappropriate.

## CONCLUSION

For the foregoing reasons, the district court's order granting Lenders' motions to stay should be reversed.

Dated: January 27, 2014                Respectfully submitted,

                                */s/ Casey L. Griffith*

Casey L. Griffith

Klemchuk Kubasta LLP

8150 North Central Expressway, 10th Floor

Dallas, Texas 75206

(214) 367-6000 (Telephone)

(214) 367-6001 (Facsimile)

Casey.griffith@kk-llp.com

*Counsel for Plaintiffs-Appellants*
*Benefit Funding Systems LLC, Retirement*
*Capital Access Management Company LLC*

# ADDENDUM

# TABLE OF CONTENTS

**Addendum Page**

Order Granting Motion to Stay of
The Honorable Leonard P. Stark
     filed October 25, 2013 ..........................................................................Add. 1

Transcript of Oral Argument Hearing before
The Honorable Leonard P. Stark
     on October 25, 2013 ..........................................................................Add. 5

ded_nefreply@ded.uscourts.gov                                                    October 25, 2013  4:03 PM
To:  ded_ecf@ded.uscourts.gov
Activity in Case 1:12-cv-00801-LPS Benefit Funding Systems LLC et al v. Advance America Cash Advance Centers Inc. Order

---

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**District of Delaware**

**Notice of Electronic Filing**

The following transaction was entered on 10/25/2013 at 5:02 PM EDT and filed on 10/25/2013
**Case Name:**          Benefit Funding Systems LLC et al v. Advance America Cash Advance Centers Inc.
**Case Number:**        1:12-cv-00801-LPS
**Filer:**
**Document Number:** 89(No document attached)

**Docket Text:**
**ORAL ORDER: For the reasons stated in Court this same date, IT IS HEREBY ORDERED that the motions to stay these related cases (C.A. No. 12-801 D.I. 77 and 78; C.A. No. 12-802 D.I. 59; C.A. No. 12-803 D.I. 59) are GRANTED. All three of these cases are STAYED pending completion of the PTAB's CBM Review of the validity of the claims of the '582 patent. The parties shall file joint status reports in each of these actions no later than ten (10) days after the completion of the CBM Review. ORDERED by Judge Leonard P. Stark on 10/25/13. Associated Cases: 1:12-cv-00801-LPS, 1:12-cv-00802-LPS, 1:12-cv-00803-LPS (ntl)**

**Case Name:**          Benefit Funding Systems LLC et al v. Regions Financial Corporaiton
**Case Number:**        1:12-cv-00802-LPS
**Filer:**
**Document Number:** 65(No document attached)

**Docket Text:**
**ORAL ORDER: For the reasons stated in Court this same date, IT IS HEREBY ORDERED that the motions to stay these related cases (C.A. No. 12-801 D.I. 77 and 78; C.A. No. 12-802 D.I. 59; C.A. No. 12-803 D.I. 59) are GRANTED. All three of these cases are STAYED pending completion of the PTAB's CBM Review of the validity of the claims of the '582 patent. The parties shall file joint status reports in each of these actions no later than ten (10) days after the completion of the CBM Review. ORDERED by Judge Leonard P. Stark on 10/25/13. Associated Cases: 1:12-cv-00801-LPS, 1:12-cv-00802-LPS, 1:12-cv-00803-LPS (ntl)**

**Case Name:**          Benefit Funding Systems LLC et al v. US Bancorp
**Case Number:**        1:12-cv-00803-LPS
**Filer:**
**Document Number:** 66(No document attached)

**Docket Text:**
**ORAL ORDER: For the reasons stated in Court this same date, IT IS HEREBY ORDERED that the motions to stay these related cases (C.A. No. 12-801 D.I. 77 and 78; C.A. No. 12-802 D.I. 59; C.A. No. 12-803 D.I. 59) are GRANTED. All three of these cases are STAYED pending completion of the PTAB's CBM Review of the validity of the claims of the '582 patent. The parties shall file joint status reports in each of these actions no later than ten (10) days after the completion of the CBM Review. ORDERED by Judge Leonard P. Stark on 10/25/13. Associated Cases: 1:12-cv-00801-LPS, 1:12-cv-00802-LPS, 1:12-cv-00803-LPS (ntl)**

**Appendix Page 758**

**1:12-cv-00801-LPS Notice has been electronically mailed to:**

Frederick L. Cottrell, III cottrell@rlf.com, cathers@rlf.com, garvey@rlf.com

Brian E. Farnan bfarnan@farnanlaw.com, tfarnan@farnanlaw.com

Christopher M. Coggins ccoggins@polsinelli.com, msimione@polsinelli.com

Ann G. Fort ann.fort@sutherland.com

Michael J. Farnan mfarnan@farnanlaw.com, tfarnan@farnanlaw.com

Travis Steven Hunter hunter@rlf.com, casper@rlf.com, cathers@rlf.com

Robyn H. Ast-Gmoser rastgmoser@polsinelli.com

Mark T. Deming mdeming@polsinelli.com, rhoward@polsinelli.com

John A. Leja jleja@polsinelli.com, lmarrs@polsinelli.com

Casey L. Griffith casey.griffith@kk-llp.com, blair.reynolds@kk-llp.com

Austin S. Champion austin.champion@kk-llp.com, blair.reynolds@kk-llp.com

**1:12-cv-00801-LPS Filer will deliver document by other means to:**

**1:12-cv-00802-LPS Notice has been electronically mailed to:**

Kenneth Laurence Dorsney kdorsney@morrisjames.com, ippara@morrisjames.com

John M. Caracappa jcaracap@steptoe.com, azellner@steptoe.com

Gretchen P. Miller gmiller@steptoe.com, ncoupal@steptoe.com

Paul A. Gennari pgennari@steptoe.com

**1:12-cv-00802-LPS Filer will deliver document by other means to:**

**1:12-cv-00803-LPS Notice has been electronically mailed to:**

Richard L. Horwitz rhorwitz@potteranderson.com, iplitigation@potteranderson.com, lfernandes@potteranderson.com, mbaker@potteranderson.com, mhoughton@potteranderson.com, ntarantino@potteranderson.com, shamlin@potteranderson.com

David Ellis Moore dmoore@potteranderson.com, lfernandes@potteranderson.com, ntarantino@potteranderson.com, shamlin@potteranderson.com

Brian H. Pandya bpandya@wileyrein.com

Anthony Son ason@wileyrein.com

Ryan Corbett rcorbett@wileyrein.com

**1:12-cv-00803-LPS Filer will deliver document by other means to:**

**Appendix Page 759**

ded_nereply@ded.uscourts.gov

October 28, 2013 9:42 AM

To: ded_ecf@ded.uscourts.gov

Activity in Case 1:12-cv-00801-LPS Benefit Funding Systems LLC et al v. Advance America Cash Advance Centers Inc. Oral Argument

---

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### District of Delaware

#### Notice of Electronic Filing

The following transaction was entered on 10/28/2013 at 10:41 AM EDT and filed on 10/25/2013

| | |
|---|---|
| **Case Name:** | Benefit Funding Systems LLC et al v. Advance America Cash Advance Centers Inc. |
| **Case Number:** | 1:12-cv-00801-LPS |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Minute Entry for proceedings held before Judge Leonard P. Stark - Oral Argument held on 10/25/2013. (Court Reporter B. Gaffigan.) Associated Cases: 1:12-cv-00801-LPS, 1:12-cv-00802-LPS, 1:12-cv-00803-LPS(ntl)**

| | |
|---|---|
| **Case Name:** | Benefit Funding Systems LLC et al v. Regions Financial Corporaiton |
| **Case Number:** | 1:12-cv-00802-LPS |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Minute Entry for proceedings held before Judge Leonard P. Stark - Oral Argument held on 10/25/2013. (Court Reporter B. Gaffigan.) Associated Cases: 1:12-cv-00801-LPS, 1:12-cv-00802-LPS, 1:12-cv-00803-LPS(ntl)**

| | |
|---|---|
| **Case Name:** | Benefit Funding Systems LLC et al v. US Bancorp |
| **Case Number:** | 1:12-cv-00803-LPS |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Minute Entry for proceedings held before Judge Leonard P. Stark - Oral Argument held on 10/25/2013. (Court Reporter B. Gaffigan.) Associated Cases: 1:12-cv-00801-LPS, 1:12-cv-00802-LPS, 1:12-cv-00803-LPS(ntl)**

#### 1:12-cv-00801-LPS Notice has been electronically mailed to:

Frederick L. Cottrell, III cottrell@rlf.com, cathers@rlf.com, garvey@rlf.com

Brian E. Farnan bfarnan@farnanlaw.com, tfarnan@farnanlaw.com

Christopher M. Coggins ccoggins@polsinelli.com, msimione@polsinelli.com

Ann G. Fort ann.fort@sutherland.com

Michael J. Farnan mfarnan@farnanlaw.com, tfarnan@farnanlaw.com

**Appendix Page 760**

Travis Steven Hunter hunter@rlf.com, casper@rlf.com, cathers@rlf.com

Robyn H. Ast-Gmoser rastgmoser@polsinelli.com

Mark T. Deming mdeming@polsinelli.com, rhoward@polsinelli.com

John A. Leja jleja@polsinelli.com, lmarrs@polsinelli.com

Casey L. Griffith casey.griffith@kk-llp.com, blair.reynolds@kk-llp.com

Austin S. Champion austin.champion@kk-llp.com, blair.reynolds@kk-llp.com

**1:12-cv-00801-LPS Filer will deliver document by other means to:**

**1:12-cv-00802-LPS Notice has been electronically mailed to:**

Kenneth Laurence Dorsney kdorsney@morrisjames.com, ippara@morrisjames.com

John M. Caracappa jcaracap@steptoe.com, azellner@steptoe.com

Gretchen P. Miller gmiller@steptoe.com, ncoupal@steptoe.com

Paul A. Gennari pgennari@steptoe.com

**1:12-cv-00802-LPS Filer will deliver document by other means to:**

**1:12-cv-00803-LPS Notice has been electronically mailed to:**

Richard L. Horwitz rhorwitz@potteranderson.com, iplitigation@potteranderson.com, lfernandes@potteranderson.com, mbaker@potteranderson.com, mhoughton@potteranderson.com, ntarantino@potteranderson.com, shamlin@potteranderson.com

David Ellis Moore dmoore@potteranderson.com, lfernandes@potteranderson.com, ntarantino@potteranderson.com, shamlin@potteranderson.com

Brian H. Pandya bpandya@wileyrein.com

Anthony Son ason@wileyrein.com

Ryan Corbett rcorbett@wileyrein.com

**1:12-cv-00803-LPS Filer will deliver document by other means to:**

**Appendix Page 761**

ded_nefreply@ded.uscourts.gov

November 20, 2013 11:12 AM

To: ded_ecf@ded.uscourts.gov

Activity in Case . Benefit Funding Systems LLC et al v. Regions Financial Corporaiton Transcript

---

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

### U.S. District Court

### District of Delaware

**Notice of Electronic Filing**

The following transaction was entered on 11/20/2013 at 12:11 PM EST and filed on 11/20/2013
**Case Name:**          Benefit Funding Systems LLC et al v. Advance America Cash Advance Centers Inc.
**Case Number:**     1:12-cv-00801-LPS
**Filer:**
**Document Number:** 90

**Docket Text:**
**Official Transcript of Oral Argument Hearing held on October 25, 2013 before Judge Leonard P. Stark. Court Reporter Brian Gaffigan, Telephone (302) 573-6360. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date, it may be obtained through PACER. Redaction Request due 12/11/2013. Redacted Transcript Deadline set for 12/23/2013. Release of Transcript Restriction set for 2/18/2014. (bpg)**

**Case Name:**          Benefit Funding Systems LLC et al v. Regions Financial Corporaiton
**Case Number:**     1:12-cv-00802-LPS
**Filer:**
**Document Number:** 66

**Docket Text:**
**Official Transcript of Oral Argument Hearing held on October 25, 2013 before Judge Leonard P. Stark. Court Reporter Brian Gaffigan, Telephone (302) 573-6360. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date, it may be obtained through PACER. Redaction Request due 12/11/2013. Redacted Transcript Deadline set for 12/23/2013. Release of Transcript Restriction set for 2/18/2014. (bpg)**

**Case Name:**          Benefit Funding Systems LLC et al v. US Bancorp
**Case Number:**     1:12-cv-00803-LPS
**Filer:**
**Document Number:** 67

**Docket Text:**
**Official Transcript of Oral Argument Hearing held on October 25, 2013 before Judge Leonard P. Stark. Court Reporter Brian Gaffigan, Telephone (302) 573-6360. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date, it may be obtained through PACER. Redaction Request due 12/11/2013. Redacted Transcript Deadline set for 12/23/2013. Release of Transcript Restriction set for 2/18/2014. (bpg)**

**1:12-cv-00801-LPS Notice has been electronically mailed to:**

Frederick L. Cottrell, III cottrell@rlf.com, cathers@rlf.com, garvey@rlf.com

**Appendix Page 762**

Brian E. Farnan bfarnan@farnanlaw.com, tfarnan@farnanlaw.com

Christopher M. Coggins ccoggins@polsinelli.com, msimione@polsinelli.com

Ann G. Fort ann.fort@sutherland.com

Michael J. Farnan mfarnan@farnanlaw.com, tfarnan@farnanlaw.com

Travis Steven Hunter hunter@rlf.com, casper@rlf.com, cathers@rlf.com

Robyn H. Ast-Gmoser rastgmoser@polsinelli.com, plahey@polsinelli.com

Mark T. Deming mdeming@polsinelli.com, rhoward@polsinelli.com

John A. Leja jleja@polsinelli.com, lmarrs@polsinelli.com

Casey L. Griffith casey.griffith@kk-llp.com, blair.reynolds@kk-llp.com

Austin S. Champion austin.champion@kk-llp.com, blair.reynolds@kk-llp.com

**1:12-cv-00801-LPS Filer will deliver document by other means to:**

**1:12-cv-00802-LPS Notice has been electronically mailed to:**

Kenneth Laurence Dorsney kdorsney@morrisjames.com, ippara@morrisjames.com

John M. Caracappa jcaracap@steptoe.com, azellner@steptoe.com

Gretchen P. Miller gmiller@steptoe.com, ncoupal@steptoe.com

Paul A. Gennari pgennari@steptoe.com

**1:12-cv-00802-LPS Filer will deliver document by other means to:**

**1:12-cv-00803-LPS Notice has been electronically mailed to:**

Richard L. Horwitz rhorwitz@potteranderson.com, iplitigation@potteranderson.com, lfernandes@potteranderson.com, mbaker@potteranderson.com, mhoughton@potteranderson.com, ntarantino@potteranderson.com, shamlin@potteranderson.com

David Ellis Moore dmoore@potteranderson.com, lfernandes@potteranderson.com, ntarantino@potteranderson.com, shamlin@potteranderson.com

Brian H. Pandya bpandya@wileyrein.com

Anthony Son ason@wileyrein.com

Ryan Corbett rcorbett@wileyrein.com

**1:12-cv-00803-LPS Filer will deliver document by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=11/20/2013] [FileNumber=2046613-0] [bfed1e6a1a82cc6998bdc38f60fef52221fb7efafa9f74443216cb7df7d9e3af5d 42e50209fc340126e4477acc80c04e86216f722ff868a7b691056ebf9d2074]]

1

<pre>
09:50:24  1                    IN THE UNITED STATES DISTRICT COURT

          2                    IN AND FOR THE DISTRICT OF DELAWARE

          3                              - - -
             BENEFIT FUNDING SYSTEMS LLC and RETIREMENT : CIVIL ACTION
          4  CAPITAL ACCESS MANAGEMENT COMPANY LLC,     :
                                                        :
          5                    Plaintiffs,              :
             v                                          :
          6                                             :
             ADVANCE AMERICA CASH ADVANCE CENTERS, INC.,:
          7                                             : NO. 12-801-LPS
                               Defendant.               :
          8  -----------------------------------------

          9  BENEFIT FUNDING SYSTEMS LLC and RETIREMENT : CIVIL ACTION
             CAPITAL ACCESS MANAGEMENT COMPANY LLC,     :
         10                                             :
                               Plaintiffs,              :
         11  v                                          :
                                                        :
         12  REGIONS FINANCIAL CORPORATION,             :
                                                        : NO. 12-802-LPS
         13                    Defendant.               :
             -----------------------------------------
         14
             BENEFIT FUNDING SYSTEMS LLC and RETIREMENT : CIVIL ACTION
         15  CAPITAL ACCESS MANAGEMENT COMPANY LLC,     :
                                                        :
         16                    Plaintiffs,              :
             v                                          :
         17                                             :
             U.S. BANCORP.,                             :
         18                                             : NO. 12-803-LPS
                               Defendant.               :
         19
                                      - - -
         20
                              Wilmington, Delaware
         21                 Friday, October 25, 2013
                             Oral Argument Hearing
         22
                                      - - -
         23
             BEFORE:          HONORABLE LEONARD P. STARK, U.S.D.C.J.
         24
                                      - - -
         25
</pre>

**Appendix Page 764**

Add. 7

2

1  APPEARANCES:

2

3  FARNAN, LLP
   BY:  JOSEPH J. FARNAN, III, ESQ.

4       and

5  KLEMCHUK KUBASTA, LLP
   BY:  CASEY L. GRIFFITH, ESQ., and
6       AUSTIN S. CHAMPION, ESQ.
        (Dallas, Texas)
7
        Counsel for Plaintiffs
8

9  RICHARDS LAYTON & FINGER, LLP
   BY:  TRAVIS STEVEN HUNTER, ESQ.
10
        and
11
   SUTHERLAND ASBILL & BRENNAN, LLP
12 BY:  ANN G. FORT, ESQ.
        (Atlanta, Georgia)
13
        Counsel for Advance America
14      Cash Advance Centers Inc.

15

16 POTTER ANDERSON & CORROON, LLP
   BY:  RICHARD L. HORWITZ, ESQ.
17
        and
18
   WILEY REIN, LLP
19 BY:  ANTHONY H. SON, ESQ., and
        RYAN M. CORBETT, ESQ.
20      (Washington, District of Columbia)

21      Counsel for U.S. Bancorp

22 MORRIS JAMES, LLP
   BY:  KENNETH L. DORSNEY, ESQ.
23
        and
24
                    Brian P. Gaffigan
25                  Registered Merit Reporter

3

1  APPEARANCES:  (Continued)

2

3  STEPTOE & JOHNSON, LLP
   BY:  PAUL A. GENNARI, ESQ.
        (Washington, District of Columbia)
4
        On behalf of Regions Financial Corporation
5

6  POLSINELLI, PC
   BY:  CHRISTOPHER M. COGGINS, ESQ.
7
        and
8
   POLSINELLI, PC
9  BY:  JOHN A. LEJA, ESQ.
10      (Chicago, Illinois)

11      On behalf of CNU Online Holdings, LLC

12

13             - oOo -
14      P R O C E E D I N G S
15      (REPORTER'S NOTE:  The following oral argument
16 hearing was held in open court, beginning at 3:32 p.m.)
17      THE COURT:  Good afternoon.
18      (The attorneys respond, "Good afternoon, Your
19 Honor.")
20      THE COURT:  Let me have you put your appearances
21 on the record for me, please.
22      MR. FARNAN:  Good afternoon, Your Honor.
23      THE COURT:  Good afternoon.
24      MR. FARNAN:  Joseph Farnan on behalf of the
25 plaintiffs, Benefit Funding Systems and Capital Retirement

4

1  Access Management Company.  With me is Casey Griffith and

2  Austin Champion of Klemchuk Kusbasta in Dallas, Texas.  They

3  both have been admitted pro hac.

4       THE COURT:  Thank you very much.  Welcome to

5  both of you.

6       MR. CHAMPION:  Thank you.

7       MR. FARNAN:  Thank you.

8       MR. HORWITZ:  Good afternoon, Your Honor.

9       THE COURT:  Good afternoon.

10      MR. HORWITZ:  Rich Horwitz from Potter Anderson

11 on behalf of U.S. Bancorp.  With me is Anthony Son and Ryan

12 Corbett, and Mr. Son will be taking the lead.

13      THE COURT:  Okay.  Welcome.

14      MR. COGGINS:  Good afternoon, Your Honor.  Chris

15 Coggins of Polsinelli representing CNU Online Holdings.  I

16 have with me from our Chicago office, John Leja.  He has

17 been admitted pro hac vice; and he will be doing the arguing

18 today.

19      THE COURT:  Okay.  Thank you.

20      MR. DORSNEY:  Good morning, your Honor.  Ken

21 Dorsney of Morris James; and Paul Gennari of Steptoe &

22 Johnson for Regions Financial Corporation.

23      THE COURT:  Okay.  Welcome.

24      MR. HUNTER:  Good morning, Your Honor.  Travis

25 Hunter from Richard Layton & Finger on behalf of Advance

5

1  America Cash Advance Center.  I have with me Ann Fort from

2  Sutherland, Asbill & Brennan from Georgia.

3       THE COURT:  Welcome to you as well.

4       That was all of you, I believe.  Okay.  Have a

5  seat.

6       We're here for argument on the various motions

7  to stay pending the covered business method review of the

8  patent in suit.  From the introduction, it sounds as if

9  Mr. Son is going first, but other defendants may wish to be

10 heard.  Mr. Son, why don't you address that for me.

11      MR. SON:  Thank you, Your Honor.  I think that

12 is the plan here.  I anticipate hopefully being done about

13 10-15 minutes, and then I'll reserve.

14      THE COURT:  Okay.  That's fine.  We'll hear from

15 you and then any remaining defendants.  So you can go ahead.

16 Come on back, and we'll just let plaintiff respond.

17      MR. SON:  Thank you, Your Honor.

18      This is a renewed motion to stay pending the CBM

19 review that was filed in April of this year by U.S. Bancorp.

20 One thing that I would like to note for Your Honor is that

21 the other defendants in the related cases have also filed a

22 CBM petition that is currently pending with the Patent and

23 Trademark Office.  It is identical to the U.S. Bancorp

24 petition.

25      THE COURT:  As of now, your client is the only

Add. 8

6

1  one that is actually a party formally to a CBM review?
2         MR. SON:  It is the only petition that had been
3  granted by the Patent Office.
4         THE COURT:  And is it your understanding --
5  I'll confirm with the other defendants but is it your
6  understanding that regardless of the outcome of their
7  petitions that they've all agreed to be estopped on the 101
8  issue in this court?
9         MR. SON:  That is correct, Your Honor.  That is
10  my understanding as well.
11         THE COURT:  Okay.  Go ahead.
12         MR. SON:  Since the first motion to stay, there
13  have been a change; and it is a very significant change
14  here.  That is the granting of the U.S. Bancorp petition for
15  the CBM review.
16         In addition to that, as a result of the
17  granting, there is also a schedule in place for that CBM
18  review.  That schedule now has us on a track where we will
19  have a hearing or what the Patent Office calls a trial on
20  the merits of the CBM petition scheduled for April 1st of
21  2014.  Based on that schedule, we are now at a further or a
22  faster pace in the CBM review than what we will be here in
23  this District Court litigation.
24         One point to be pointed out to kind of
25  illustrate that, in light of the amended scheduling order

7

1  that was filed and granted by this Court, fact discovery
2  will not close in this case until March 17th of 2014,
3  approximately two weeks prior to the trial in the CBM
4  petition for U.S. Bancorp.
5         When addressing whether or not there should be a
6  stay here, there are four factors that have been set forth
7  in Section 18 of the America Invents Act.
8         The first factor is whether a stay will simplify
9  the issue in question and streamline the trial.
10         In our view, we believe that now that the CBM
11  petition has been granted that is in fact the case.
12  All of the claims that are asserted against U.S. Bancorp as
13  well as our codefendants are subject to the CBM review and
14  in order to grant that CBM petition, the Patent Office
15  has found it more likely than not that those patents are
16  invalid -- that is, that the claims are invalid.  So by
17  resolution of the CBM petition, it will now eliminate one
18  issue in the case, whether or not this is a statutory public
19  matter, and if we are correct and they are not, then this
20  case will be over as well.
21         THE COURT:  What is the burden of proving
22  invalidity ultimately under the covered business method
23  procedure?
24         MR. SON:  It is a preponderance.
25         THE COURT:  It's a preponderance?

8

1         MR. SON:  Correct.
2         THE COURT:  So is that the same exact standard
3  that's already applied in granting the review?
4         MR. SON:  No.  In the granting of the review,
5  the question there is whether it is more likely than not
6  that the patents are invalid -- that the claims are invalid.
7         THE COURT:  And that's different than the
8  standard they will ultimately apply?
9         MR. SON:  I don't think that has really been
10  decided here on that issue.  I've seen some debate out
11  there as to whether or not, comparing the two, whether there
12  is a substantial new question of patentability from a
13  reexamination context.  But I don't have the answer to your
14  specific question there.
15         One of the cases that also came out after,
16  subsequent to the first hearing that we think is very
17  instructive here is Your Honor's decision in the *SoftView* v
18  *Apple* case.  In the *SoftView* case, you had previously denied
19  a motion to stay when it went to reexamination that was
20  pending.  Subsequent to that time period, there was an
21  granting of an IPR which is similar to a CBM with the Patent
22  Office.  And it was that fact that there was an IPR grant
23  at the Patent Office and the speed of which that IPR would
24  progress forward that convinced this Court to change from
25  denying the motion to stay to granting the motion to stay.

9

1         We think that a lot of the factors that were
2  presented in the *SoftView* case are similar to the factors
3  here.  All of the issues with respect to whether the claims
4  are valid or invalid from Section 101 will be addressed from
5  the CBM review.
6         Plaintiff did point out that there are other
7  defenses that defendants have raised, and the fact we have
8  other defenses should be a basis upon which it would not
9  be a streamlining of the case.  But the facts still remain
10  that a case will not exist unless they prevail at the Patent
11  Office.
12         Another factor to be considered is whether
13  discovery is complete and whether a trial date has been set.
14         There has been no pretrial conference date.
15  There has been no trial date set.  As previously mentioned,
16  the fact discovery cutoff is March 17th of 2014.
17         There is some debate here between the two
18  parties as to how far along we are in the discovery process.
19  Both sides have only served one set of discovery requests,
20  one set of interrogatories, one set of requests for production.
21         U.S. Bancorp has subsequently completed its
22  document production.  We have had some communications, we
23  passed one or two documents back and forth, but for the most
24  part we have substantially completed our document production.
25         We understand plaintiffs today just served

10

1  4,700 pages of documents, so we are still in the early
2  stages of discovery. There have been no depositions
3  scheduled. There have been no depositions noticed.
4         Even after Your Honor's decision back in June
5  denying the motion to stay and expressing one concern of
6  potential evidence staleness, plaintiffs have not done
7  anything to preserve any evidence in this case. I also note
8  that in opposition to our motion, they have not identified
9  any evidence that they think could be lost if a stay were to
10  be granted.
11        Expert disclosures could not begin until
12  May 9th, 2014. That would be more than one month after the
13  trial of the CBM review. Dispositive motions are not due
14  to be filed until August of 2014, which in the CBM context a
15  decision must be rendered within one year of the granting of
16  the petition or they can get a six-month extension upon good
17  showing, or good cause shown.
18        So it is very likely that the CBM review will
19  be complete and a final decision will issue prior to the
20  dispositive motion deadline, certainly prior to the briefing
21  is complete in a dispositive motion, and that is required by
22  statute.
23        THE COURT: What if your counterparts' petitions
24  are granted? Might that slow things down at the PTAB?
25        MR. SON: No, because our's is statutory. The

11

1  counterpoint to a stay is statutory. They have to grant,
2  decide this by that time without showing good cause.
3         THE COURT: That is the one year date grant of
4  review?
5         MR. SON: Correct.
6         THE COURT: Okay.
7         MR. SON: The third factor is whether a stay
8  would unduly prejudice a nonmoving party, present a clear
9  tactical advantage for the moving party.
10        Here, plaintiffs are a non-practicing entity.
11  They do not compete with any of the defendants. We're not
12  aware of any product or services that they offer. They have
13  not moved for a preliminary injunction. Plaintiffs have an
14  adequate remedy of law if it were to prevail.
15        I think that is one factor the Court should look
16  at, that there is not going to be any prejudice here during
17  the stay period. Damages presumably would be accruing.
18        The only undue prejudice they have identified
19  in the responsive brief is the fact they may have lose
20  their chosen forum. They argued they chose to file this
21  litigation in the District of Delaware. Well, U.S. Bancorp
22  cannot file a petition for CBM review until they have either
23  been sued or they have been threatened with a lawsuit.
24        The first time U.S. Bancorp even learned of the
25  plaintiffs in this case is when they were sued, so the very

12

1  first opportunity they could file a CBM petition was after
2  the lawsuit was filed. And the very nature of that means
3  that what comes with balancing there is that it would be
4  more efficient possibly for some defendant to go to the
5  Patent Office and seek review on a very specific invalidity
6  defense, if they so choose. That was already contemplated
7  by Congress when they put in that step, Section 18.
8         Then the final factor is whether a stay will
9  reduce the burden of litigation of the parties and the
10  Court.
11        If the stay is granted, we are still many, many
12  months, if not years, a year or more from a trial in this
13  case. There would be a lot more discovery disputes probably
14  as we go forward. Since the denial of the motion to stay,
15  there has been virtually no discovery taking place other
16  than the production of the documents.
17        The Court would not be burdened with having to
18  deal with expert disclosures issues. The Court would not be
19  burdened with having to deal with summary judgment motions.
20  Importantly, the Court would not have to deal with the
21  Markman hearing which is scheduled for next year, but the
22  disclosures for the parties for that Markman hearing, the
23  briefing, begins November 8th. So we think that factor
24  weighs very heavily in favor of a stay.
25        And the fourth factor, that is a factor that

13

1  Congress included in Section 18(b). Specifically, as the
2  legislative history points out, you put a heavy thumb
3  towards granting of a stay. And as Congress acknowledged at
4  that time, that this fourth factor, it would be in a rare
5  case in light of the fourth factor that a stay would not be
6  granted.
7         Now, the only other argument that plaintiffs
8  have raised here in their opposition, they now challenge
9  the statutory authority for the Patent Office to even
10  consider the CBM review. We believe that that is a red
11  herring. That is not an issue with the present motion here.
12        And, moreover, the case that they cite in the
13  footnote of their brief talked about the *Versata Development
14  Group* case pending in the Eastern District of Virginia.
15  That case determined that the District Court did not have
16  jurisdiction to determine the appropriateness of the Patent
17  Office in granting CBM review on a Section 101 issue.
18        THE COURT: Well, that may be right, but doesn't
19  that go to the simplification factor? That is, if it turns
20  out ultimately that 101 challenges are not within the scope
21  of a proper CBM review, then all the simplification your
22  side is promising me at the end of the day won't actually
23  happen, will it?
24        MR. SON: Well, and I do see your point. That
25  is, what you are assuming there is that if we go through the

Appendix Page 767

Add. 10

14

**1** CBM process and it's determined that it is not appropriately

**2** before the Patent Office, then there will be no estoppel

**3** provision as well.

**4** THE COURT: Right. There would be no estoppel

**5** presumably if that is the way things play out on whether 101

**6** is within properly the scope.

**7** MR. SON: To that point, I would think that with

**8** respect to the CBM review here that we will go through the

**9** 101 process and we'll at least have a determination with the

**10** 101.

**11** If we are correct at the Patent Office that

**12** these claims are not patentable subject matter under Section

**13** 101, I think that determination, even if they maybe do not

**14** have the statutory authority, if we were to assume that, to

**15** make that determination, that decision may be helpful to

**16** this Court to analyze Section 101 issue. Similarly, if

**17** it were to be denied, I think that decision would also be

**18** helpful and instructive to this Court as well. So I think

**19** there would be some simplification of the issue.

**20** THE COURT: You argue that the plaintiffs in

**21** the context of the CBM review have not listed any motion

**22** by which they want to raise the 101 issue. That is, this

**23** question of whether it is within the scope of CBM review,

**24** that they haven't, in their initial list of motions they

**25** want to raise, mentioned that to the PTAB.

15

**1** Is it your understanding that they have no later

**2** opportunity to amend that or to try to get that issue before

**3** the PTAB at this point?

**4** MR. CHAMPION: Yes. What they would need to do,

**5** they would have to ask permission with the Patent Office to

**6** ask for a motion to be able to do so. You have to ask for

**7** permission before you do that. There are two points to

**8** that, Your Honor.

**9** In the preliminary list of motions, they did

**10** not raise that as an issue, as you correctly noted. They

**11** also did not raise that in their preliminary response to

**12** our petition. They didn't say to the Patent Office at the

**13** get-go, you don't even have statutory authority to consider

**14** this.

**15** So we believe that because they didn't raise it

**16** in the very initial preliminary response that that issue has

**17** actually been waived. And we also believe that if they were

**18** to ask the Patent Office to have a motion on that issue,

**19** that motion will be denied.

**20** THE COURT: Okay.

**21** MR. SON: Do you have any further questions?

**22** THE COURT: No. Thank you very much.

**23** I'll hear from anybody else on the defense side

**24** that wishes to be heard.

**25** MR. GENNARI: Good morning. Paul Gennari for

16

**1** Regions Bank.

**2** The only thing I would like to note is that --

**3** THE COURT: Let me have you come to the

**4** microphone. I'm having a little trouble hearing. Thank

**5** you.

**6** MR. GENNARI: The only thing I would like to

**7** know is that Regions Bank has also substantially completed

**8** its document production. We produced nearly 20,000 pages of

**9** documents. I think in our initial brief, we had a typo and

**10** we said 2,000, but it was a typo. It should be 20,000; and

**11** we are substantially complete as well as U.S. Bancorp.

**12** THE COURT: Does your client agree to be

**13** estopped from pressing the 101 issue here in this court

**14** regardless of what may happen to the petition or your

**15** separate petition at the PTAB?

**16** MR. GENNARI: That's correct. We stated that in

**17** our initial motion to stay and in our present renewed motion

**18** to stay.

**19** THE COURT: Okay. Thank you.

**20** MR. GENNARI: Thank you.

**21** THE COURT: Are there any other defendants?

**22** MR. LEJA: Good afternoon, your Honor. John

**23** Leja on behalf of CNU.

**24** We would just like to just very briefly remind

**25** this Court that CNU has come into this case rather late.

17

**1** When we first answered the complaint was not until

**2** July 28th, and so we are in the early stage in this action

**3** as compared to some of the other defendants, and we are

**4** working diligently towards this case.

**5** You asked the question with respect to the

**6** estoppel. CNU agrees to be so bound as well.

**7** THE COURT: Okay. Thank you.

**8** MR. LEJA: Thank you.

**9** MS. FORT: Good afternoon, Your Honor.

**10** THE COURT: Good afternoon.

**11** MS. FORT: Ann Fort here for Advance America

**12** Cash Advance Centers.

**13** Advance America is substantially complete with

**14** its document production, Your Honor. And to the extent that

**15** the addition of CashNet to the case has led to extension of

**16** the discovery period, Advance America notes, as we've noted

**17** in our moving papers and our response papers, that Advance

**18** America notified the plaintiffs of the role of CashNetUSA in

**19** Advance America's accused online process. And that was in

**20** December of last year. And steps were taken to move this

**21** Court to add CashNet as defendant four months later. So to

**22** the extent that plaintiffs might now be saying that they're

**23** being prejudiced by slowing down this action, they

**24** didn't seem to be too concerned about that at that time.

**25** I also note, Your Honor, that Advance America

18

1  has, in fact, stipulated that it would be estopped by the
2  result of the U.S. Bancorp CBM petition. We did so in our
3  moving papers in our original motion to stay back in April;
4  and we reiterated that in the papers associated with our
5  renewed motion.
6          Thank you.
7          THE COURT: Thank you very much.
8          All right. I believe that was all of the
9  defendants. We'll hear now from the plaintiff.
10         Good afternoon.
11         MR. CHAMPION: Good afternoon, Judge.
12         Judge, with the Court's permission, I have a
13 presentation today for plaintiffs' argument. I also have a
14 printed copy for opposing counsel and you. May I approach
15 and give you a copy?
16         THE COURT: Yes, you may. Do you have two for
17 us? That would be best.
18         (Slides passed out.)
19         THE COURT: While we're waiting for that to
20 come up, let me ask you, because in your omnibus brief I
21 think you were still questioning this estoppel point. Are
22 plaintiffs now satisfied that all four defendants will be
23 estopped on the 101 issue regardless of what happens in the
24 discovered business method review?
25         MR. CHAMPION: I'm sorry. Can you ask that

19

1  again?
2          THE COURT: Sure. There was an indication in
3  your brief. I think you filed an omnibus response to all of
4  the motions.
5          MR. CHAMPION: Correct.
6          THE COURT: Your clients seemed to still, as
7  late as right in that brief, doubt whether or not all of
8  the defendants had agreed to be estopped on the 101 issue
9  regardless of what happens at the PTAB. In light of what
10 you heard, including up to today, do you still have that
11 skepticism?
12         MR. CHAMPION: It wasn't clear to me with
13 respect to Regions just I think because of the clarity of
14 the response that they're agreeing to be estopped based on
15 the outcome of Bancorp's PTAB review. But to the extent
16 that is what he intended to say, then, yes, if they all
17 agree to be estopped by the outcome of U.S. Bancorp's review
18 and not the outcome of their separately refiled review,
19 then, yes, it does satisfy that concern.
20         THE COURT: All right. Let me try and nail that
21 down completely.
22         Would each of the three of you -- I have lost
23 track of your names, I apologize -- stand up and tell me
24 whether we have any ambiguity whatsoever.
25         MS. FORT: I'll start, Your Honor. Ann Fort for

20

1  Advance America.
2          THE COURT: Thank you.
3          MS. FORT: We stipulate to estoppel based on the
4  results of the CBM petition filed by U.S. Bancorp to the
5  extent it actually reaches a conclusion.
6          THE COURT: Okay.
7          MR. GENNARI: Same for Regions Financial Corp.
8          THE COURT: Okay.
9          MR. LEJA: Same for CNU.
10         THE COURT: All right. Is there any ambiguity
11 left from the plaintiffs' perspective?
12         MR. CHAMPION: Not from plaintiffs's
13 perspective, no.
14         THE COURT: Okay. Thank you.
15         MR. CHAMPION: Judge, I think Senator Schumer
16 said, "It would be a rare case where a stay would be
17 denied." And I think this is one of those rare cases. And
18 it's rare or perhaps different for two reasons that apply to
19 all four factors.
20         First. There is a significant concern that
21 Section 101 is not a valid base for CBM review. And to that
22 end, it weighs heavily on Factors 1 and 4. Nothing would
23 simplify this litigation if, in fact, this is a futile
24 exercise.
25         Second. In this particular case, defendants

21

1  have exhibited a pattern of delay. Delay in discovery,
2  delay in seeking a CBM review. That delay weighs against a
3  stay as well. It weighs against Factors 2 and 3.
4          I want to talk, please, about Factors 1 and 4,
5  and, specifically, that Section 101 analysis that we
6  highlighted in our response brief.
7          Our view is that Section 101 is not a valid
8  basis for a CBM review. And how do we get there? We
9  start with the statute, Section 321. And Section 321 would
10 limit a CBM review to any ground that could be raised under
11 paragraph 2 or 3 of Section 282(b), and that's it.
12         So if we go to 282(b), paragraph 3 doesn't
13 apply; and I think we can all agree.
14         So the issue is paragraph 2: invalidity of the
15 patent or any claim in suit on any ground.
16         And there are two key elements: The ground
17 must be specified in part II, and it must be specified as a
18 condition for patentability.
19         So we look at Section 101.
20         First off, it's not specified as a condition for
21 patentability, unlike Sections 102 and 103.
22         Second of all, it explicitly states that it is
23 subject to the conditions that follow. And it does not
24 say subject to "additional conditions," it says "the
25 conditions," implying again that the conditions will follow.

In contrast to that, if we look at Section 102, it is specified as a condition for patentability; specifically, novelty; and it contains language that conditions, "A person shall be entitled to a patent unless ..."

Section 103 is very similar. It's title, Conditions For Patentability. It also contains conditioning language: "A patent may not be obtained ... if ..."

And if we tie this all together, and we look at the scope of CBM review, we have Section 282(b), that is the scope of infringement defenses underneath that statute or that section of the statute, the Patent Act. Within that, we have a smaller circle, Section 321, that is subparagraphs 2 and 3 of Section 282(b).

But, critically, Section 101 is not within that circle. Section 101 is not a condition for patentability, and it must follow that Section 101 cannot be a ground for CBM review.

In the reply briefs, the defendants cite to three cases for the proposition that Section 101 is in fact a condition for patentability.

*Bilski* v *Kappos.* Not a case arising out of infringement in patent litigation. It's an appeal from a denial by the PTO of a patent application. And the issue in that case was whether or not the patent application satisfied the patent eligibility requirement under 101.

Different deal.

It is the same with *Graham* v *John Deere*. The issue was obviousness; and only in dicta did the Court mention 101 and 102. And,

Then *Aristocrat Techs*. The holding deals with whether improper revival is a defense under Section 282. Again, in dicta, citing back to *Graham*, the Court mentioned Section 101 and mentions that as a condition of patentability but no holding in any of these cases.

THE COURT: Well, you started your argument by mentioning Senator Schumer and the legislative history. Aren't there references at least sprinkled throughout the legislative history to 101 and whether something is patentable?

MR. CHAMPION: There are certainly references both along the lines of what perhaps the defendants might argue is in their favor and contrary. For example, in the actual House Reports submitted with the bill, the House Committee Report, there is no reference to 101 being a condition for patentability, and there is certainly no reference as to the CBM review being proper under Section 101 grounds.

THE COURT: Is there anything in the legislative history that is inconsistent with 101 being within the scope of a covered business method review?

MR. CHAMPION: I don't know if I have the answer

off the top of my head as to all of the legislative history. There is certainly inconsistencies as to how things are characterized with respect to 101.

THE COURT: Are you arguing that a District Court has jurisdiction to make a decision as to whether 101 is within the scope of a PTAB review?

MR. CHAMPION: Certainly not today. And I don't know that you have to decide that, Judge. In fact, I don't know that you have to decide whether a CBM review is proper under 101. All we're asking today is for a conclusion that Factors 1 and 4 do not favor a stay because of, at least at a minimum, the uncertainty around the issue.

THE COURT: And in resolving the simplification issue, Factors 1 and 4, should I consider the possibility that your clients have waived the ability to make this argument in front of the PTAB?

MR. CHAMPION: I would argue absolutely not and I will tell you why.

First of all, what they're referring to as our response was actually the preliminary response under the CBM petition rules that have been promulgated. That preliminary response is, one, permissive; two, it's preliminary and non-binding; and, three, it's followed by a formal response. And in that formal response, there is no regulation or rule that prevents us from raising issues that weren't in the

preliminary response.

The cases relied upon by defendants in their replies are cases where the issue is raised literally for the first time on appeal, and it was completely not raised before the board or the administrative agency. That is consistent with other cases involving administrative agencies. So long as it's raised, it's not waived.

THE COURT: So I should expect that this question of whether 101 is within the scope of a covered business method review is going to be in front of the PTAB in this very case.

MR. CHAMPION: You should expect that.

THE COURT: Now, what about the suggestion we heard today that even if ultimately if you are able to make that argument to the PTAB and you prevail at the end of the day, if there is still some sort of finding on 101 in this case, that that will be helpful to us. It's sort of like analogous I suppose to additional prosecution history. Wouldn't that be a simplification factor even in the event you do prevail on that legal question?

MR. CHAMPION: Can you clarify for me what you mean by a finding as to 101?

THE COURT: Let's say hypothetically that you're permitted to make, under 101, the argument whether it's properly within the scope of the CBM review. You're

26

1 permitted to make that argument but that is rejected and
2 therefore the PTAB gets to a conclusion on whether your
3 patent is valid under 101.
4           Even if ultimately the Federal Circuit then --
5 playing the hypothetical out -- changes that legal outcome
6 and says we should never have gotten to the 101 issue, we'll
7 still have, when you all come back here, a 101 determination
8 on the facts by the PTAB. Won't that, in itself, be helpful
9 in simplifying to us?
10          MR. CHAMPION: I don't know if I can agree to
11 that, to your hypothetical. For example, if the PTAB finds
12 that the patent is invalid under 101 and that goes on
13 appeal, then the Federal Circuit may say that wasn't a
14 proper ground. There is no jurisdiction or authority to do
15 that. And so then to me, it would seem that that decision
16 is now sort of moot and gone and we're back here litigating
17 the issue of 101 again, perhaps. So I don't know if there
18 is any simplification even if you take our example to the
19 extreme.
20          But in addition to the cases that they have
21 cited, *Ultramercial*, a very recent June 2013 Federal Circuit
22 decision addresses this issue and actually says, in the
23 discussion about Section 101 -- and this was an appeal from
24 a District Court litigation involving 101. And in the
25 opinion, in the body of the opinion, the panel says the

27

1 patentee did not argue that Section 101 is not a defense to
2 infringement.
3           I submit that's almost a tip of the hat, that
4 this is in fact an issue. But because it wasn't before the
5 Federal Circuit, it wasn't decided on that ground. But
6 the Federal Circuit did make clear, this panel made clear
7 throughout the opinion that patentability is one thing
8 and patent eligibility is -- I'm sorry. Conditions of
9 patentability are one thing and patent eligibility is
10 separate. It even went so far as to say the Supreme Court
11 has repeatedly cautioned against conflating the analysis
12 between conditions of patentability and patent eligibility.
13          But moving past that, moving past the 101
14 argument, we have another problem. Section 101 is one of
15 many defenses in this litigation. And unlike, for example,
16 *SoftView* where it's an IPR, 102 and 103 are not being
17 addressed. Now, 102 and 103 are capable of being addressed on
18 a CBM petition but they're not. And as we briefed to you, 102
19 and 103 are perhaps the most significant issues to go back to
20 the PTAB because they involve significant findings of fact,
21 significant technical analyses. They involve prior art
22 analysis and ordinary skill in the art analysis. So the fact
23 that those are absent from this review weighs against a stay
24 even if you assume Section 101 is a proper ground for CBM
25 review.

28

1           Now, moving on to Factor 3, back to the theme of
2 delay. We have delays in filing the CBM petition. We have
3 delays in participating in discovery. And now we have this
4 new additional serial filing of CBM petitions after filing
5 our response brief.
6           All of this adds up to an undue prejudice to us
7 and a tactical advantage to the defendants. They've crafted
8 this case in its current condition through delay, ten months
9 after the suit was filed, ten months, U.S. Bancorp initially
10 sought a stay in this case. It's about nine months until
11 they filed their petition for CBM review.
12          Now, during that time, the parties participated
13 in disclosures, contentions. There was discovery served by
14 plaintiffs. There was mediation. There was scheduling
15 orders, protective orders and other issues that were
16 resolved.
17          Now, Advance America, CNU and Regions -- and
18 I'll asterisk CNU because they were added in July, but it's
19 been 16 months before they filed their petition for CBM
20 review and, critically, this is four months after they asked
21 the PTAB to join U.S. Bancorp's petition and the PTAB denied
22 that request.
23          So they asked to join. The PTAB said, no, you
24 must file your own separate petition, and then they sat on
25 it for four months; and now they're back and they already

29

1 filed another one.
2           Another issue that goes to this prejudice factor
3 that was discussed in the *Market-Alerts* case was this
4 duration, the relative duration or sort of -- the relative
5 duration or length of the proceedings compared to one
6 another.
7           Here, we have U.S. Bancorp's CBM renew. Now,
8 admittedly, they could do go up to March 2015. We do not
9 know. There is certainly not enough data for it. We know
10 that the PTAB waited almost six months to initiate the
11 proceeding, which was a statutory maximum.
12          We know that we do have a hearing in April, and
13 it's just a matter of how long it will take them to resolve
14 this. It can go out to March 2015.
15          THE COURT: But they do have to make a decision
16 by September 20th unless they can show some sort of good
17 cause for extending it.
18          MR. CHAMPION: That is correct. And with
19 Advance America, Regions, and CNU, we're looking at up to
20 October of 2015. Again, that is the max but we don't have
21 enough data to know otherwise. We would be speculating.
22          Now, we get to August of 2014 under the current
23 schedule to file dispositive motions. We don't know when
24 trial will be set. But, relatively speaking, it's not out
25 of the realm of possibility that this case can be resolved

Add. 14

30

1  at least on a consistently fast schedule. And then I only
2  add this issue about District Court litigation before CNU
3  was added because as we indicated in the briefing, the
4  addition of CMU really led to the scheduling order unwinding.
5      THE COURT: So what about the argument that you
6  are at least partially responsible for the delay?
7      MR. CHAMPION: Sure, and I will respond to that.
8  In a letter from Advance America, they represented that they
9  didn't provide the service that we accused of infringement.
10  This was back in 2012, late 2012. And we said can you
11  identify who does? And they did. And we said great. Can
12  we see a copy of the agreement? And they said sure. And
13  they marked it "attorney eyes only."
14      And within a week -- this was probably December.
15  And about January of this year, we said: Hey, we want to
16  show this to our client to discuss adding this party to
17  the suit. May we have an unmarked, un-AEO version of this
18  document that is redacted? And it took two and-a-half
19  months to get that document.
20      Upon getting that document, we filed our motion
21  for leave in about three weeks, after they wouldn't assent
22  to joining the party that is contractually obligated to
23  provide the service that everyone knows is accused of
24  infringement. And that is what led us here. And then, of
25  course, it took time to get that motion heard and decided.

31

1      Last factor, Factor 2. Stage of discovery.
2  Again, same thing, delay. They delayed producing documents,
3  the defendants did.
4      Advance America resisted our amended complaint.
5      There is this issue of them seeking a protective
6  order in lieu of a stay without any basis.
7      Production started in June and July of this
8  year.
9      Now, they all represent to you today that there
10  they're substantially complete, but I'll represent to you
11  I don't have a document from the defendants actually
12  identifying an infringing transaction; and I have asked for
13  them. And I understand they exist from our experts.
14      That's a separate issue, and it's certainly not
15  before you now, but in terms of delay this is not over.
16  We're still in these issues and we may be back.
17      Finally, defendants are still producing
18  documents. They may be close to done, they may be done, but
19  I believe we're expecting documents from Advance America.
20      Not withstanding all of this, we have
21  progressed. 35,000 pages approximately produced in this
22  litigation.
23      We have received over 550 discovery requests
24  between the two plaintiffs. We've responded, objected.
25      We've served over 240 discovery requests to the

32

1  four defendants.
2      There has been seven motions to stay.
3      We filed responses; and we had our two discovery
4  motions and our two hearings, including today.
5      So to wrap this up, all four factors weigh
6  against a stay. And this is a unique case, as contemplated
7  by Senator Schumer but, more importantly, the Section 101
8  issue is a big issue. It's unresolved. And at least for
9  that reason alone, we think a stay is improper.
10      Are there any questions from the Court?
11      THE COURT: So you have continued to reference
12  the legislative history. You I don't think in the brief or
13  today you alleged anything in the legislative history that
14  helped you. Should I take it that you are conceding that
15  the intent of Congress is cases like this get stayed only in
16  very rare circumstances? I understand your argument that
17  you think you are a rare circumstance, but are you conceding
18  that Congress intended these cases only get stayed in rare
19  circumstances?
20      MR. CHAMPION: Absolutely not. That would
21  violate the constitutional objective of presentment and
22  enactment, and to say that the legislative history reflects
23  the view in Congress on the basis of one or two people
24  speaking during debate making statements in support of their
25  position would be to go too far on the face of the actual

33

1  legislation using the four factor test. And if you look
2  at the case law arising prior to the enactment, there were
3  cases applying the four factor test, and there was never an
4  indication in that wall that this is all of the one percent
5  that are stayed.
6      THE COURT: So looking just at the statutory
7  language of that fourth factor, do you have any argument
8  that the fourth factor makes it more likely that courts
9  should grant stays?
10      MR. CHAMPION: Looking at the case law, it's
11  duplicative of the first factor. And, if anything, the
12  courts historically just lumped it in and said we have a
13  four factor test, we consider them together, and they do
14  the analysis.
15      THE COURT: Okay. Is there anything else?
16      MR. CHAMPION: I have nothing further.
17      THE COURT: Okay. Great. We'll give defendants
18  a chance for rebuttal, if they wish.
19      MR. SON: Let me just make a couple quick
20  comments and I'll finish here.
21      With respect to the legislative history and the
22  fact of whether Senate Schumer places a heavy hand or a
23  heavy thumb in favor of a stay here, that is something that
24  also came from this District Court. Chief Judge Sleet in
25  the *Market-Alerts* case went through the legislative history

Appendix Page 72

Add. 15

34

1 in that analysis and how it does in fact sway the Court
2 towards the granting or weigh towards favoring a stay.
3     If I could comment about some of the discovery
4 requested issues. There has never been a motion to compel
5 discovery filed against U.S. Bancorp. These was some of our
6 other codefendants but not against U.S. Bancorp.
7     I think it's unfair here in this hearing where
8 we have heard plaintiffs try to lump U.S. Bancorp in their
9 case which has not been consolidated; it was related, and
10 we operate under the same schedule, but we have not been
11 consolidated; to lump us together with necessarily everyone
12 else.
13     And to that point, with respect to the document
14 production and discovery here, if U.S. Bancorp produces a
15 substantial amount of documents as part of the core technical
16 disclosure required by the default standards and then it
17 also served, produced documents I believe within six weeks of
18 the service of their request for production of documents,
19 plaintiffs take the same amount of time.
20     So we took the same amount of time from the time
21 they served document requests to produce documents in this
22 case as they have taken to produce documents to us in
23 response to our discovery requests. So I don't think it's
24 fair for them to try to cast a stone to us and say that
25 somehow we delayed producing documents. Both parties have

35

1 taken the same amount of time on that.
2     The comment about the condition of the
3 patentability. I want to read to Your Honor the Federal
4 Circuit decision from *Aristocrat*. And this was in 2008,
5 written by I believe it was Circuit Judge Linn at the time.
6 On page 661 -- it was 543 F.3d at 661. The Federal Circuit
7 stated: "It has long been understood that the Patent Act
8 sets out the condition for patentability in three sections:
9 Sections 101, 102 and 103." And, of course, citing to the
10 Supreme Court decision in *Graham* v *John Deere*.
11     This is not necessarily a new issue. It might
12 be revisited because of the America Invents Act but it had
13 been long understood that the Patent Act had three conditions
14 of patentability: 101, 102, 103. That is what the Federal
15 Circuit said back in 2008.
16     The timeline that plaintiff showed with respect
17 to how the CBM petition will go, they have this long date
18 out there, I believe it was in March of 2015 if you add in
19 an additional amount.
20     In the *SAP v Versata* case, which is very similar
21 here in the sense they only went to trial on one issue, the
22 Section 101, the decision on that took six months from the
23 time they granted the petition to the time that that final
24 decision from the Patent Office came out.
25     We believe that this case has also been

36

1 expedited on the CBM petition in the sense we are going to
2 have a trial in April, many months before the deadline, and
3 we expect that a decision will be forthcoming shortly
4 thereafter. We don't believe that they are going to take
5 the amount of time they are allowed to use.
6     So unless Your Honor has any further questions?
7     THE COURT: No, thank you.
8     Are there other defendants?
9     MR. GENNARI: Paul Gennari for Regions.
10     I'd just like to point out with respect to
11 plaintiffs' comments with respect to documents produced and
12 whether document production is substantially complete, they
13 raised today I think the issue of whether we've produced or
14 some defendants have produced documents that establish some
15 kind of an infringement sale. I just want to point out that
16 up to this day, today, we have not received one deficiency
17 notice letter from the plaintiffs. This is the first time
18 we have heard of any complaints of our production.
19     As far as plaintiffs' own production, we've
20 received a first production just last week, on October 14th,
21 and they produced apparently another set of documents today.
22 So any purported impropriety on the delay is certainly on
23 plaintiffs as well.
24     THE COURT: Okay. Thank you.
25     MR. LEJA: John Leja for CNU, Your Honor.

37

1     Two issues raised by plaintiff. One was the
2 purported delay by the defendants in seeking the CBM review.
3     I don't believe it's fair to be lumping us in
4 with other defendants that may have been in the case longer.
5 As you recall, CNU was brought in the case, it's answer was
6 due July 29th. The CBM petition that was filed was filed
7 October 16th, two and-a-half months since the date for
8 answering. So by lumping us in and saying 10 to 16 months,
9 I don't think that is appropriate or fair.
10     There are also comments again regarding
11 discovery refusal. We're kind of in the same boat. We
12 haven't received any discovery motion or complaints about
13 discovery deficiencies. We have been talking with
14 plaintiffs regarding discovery.
15     I think the fact is clear to them now we are not
16 a bank and so it's different, there are different discovery
17 issues confronting us, but we have been working with them
18 trying to reach a resolution. In fact, we had a meeting
19 this week about potential alternatives to getting the types
20 of things they need. So I think I was kind of surprised to
21 see that here today, but certainly there hasn't been any
22 refusal to participate in discovery by CNU.
23     Unless you have any other questions, I'll be
24 seated.
25     THE COURT: No. Thank you.

**Appendix Page 773**

Add. 16

**38**

1    MR. LEJA: Thank you, Your Honor.

2    MS. FORT: Ann Fort for Advance America, Your

3   Honor. Three points I would like to make.

4         The first is the second CBM petition that has

5   been filed jointly by the remaining defendants in this case

6   is simply not at issue in this motion. We all informed the

7   Court that the petition had been filed, but its presence is

8   neither here nor there in terms of deciding what to do about

9   the fact that U.S. Bancorp's petition and proceeding has

10  been instituted by the PTO.

11        THE COURT: So you're only seeking a stay

12  pending the outcome of U.S. Bancorp's petition.

13        MS. FORT: At the moment because particularly

14  all of us have stipulated to be estopped by that result.

15        The process of adding CashNet to this proceeding

16  was never dependent on the production of a contract. All

17  of the information that the plaintiffs needed in order to

18  identify CashNet as a material party to this case was found

19  in the very same Advance America website pages that they

20  have cited from the very beginning of this case.

21        The identity of CashNet and its role in these

22  transactions has always been a matter of public record.

23  Advance America was under contractual obligation not to

24  disclose the full details of its contract with CashNet.

25  When Advance America was asked to produce the contract,

**39**

1   Advance America asked CashNet to consent and CashNet was not

2   willing to.

3         But, Your Honor, plaintiffs had all the

4   information they needed to add CashNet to this case before

5   they even filed this suit. And then certainly after

6   receiving the first letter from us informing them of the

7   role of CashNet, they had all the information they needed

8   and yet it took them until April of this year to move to

9   amend. That's the delay that is so significant, Your Honor.

10  It's not anything that's the fault of Advance America.

11        And, finally, Advance America has substantially

12  completed its document production. Any documents needed to

13  identify actual transactions are CNU's to handle because CNU

14  is the lending institution in this process.

15        If there are any further questions?

16        THE COURT: No, not at this time.

17        MS. FORT: Thank you, Your Honor.

18        THE COURT: Thank you. We'll take a recess, and

19  then I will come back and give you my decision.

20        (Brief recess taken.)

21        *   *   *

22        (Proceedings reconvened after recess.)

23        THE COURT: Have a seat.

24        Well, the briefing was very focused and helpful

25  as was the argument, so I'm in a position to make a ruling.

**40**

1         I have decided that I am going to stay these

2   cases, all three of them. So the motions to stay are granted.

3   Let me explain why.

4         First, let's talk briefly about the potential

5   threshold issue, whether or not a Section 101 challenge

6   based on lack of patentable subject matter is a proper basis

7   for a covered business method review.

8         It's my belief, and I think that is consistent

9   with what the parties have argued, but it's my belief that I

10  need not and certainly I will not make a decision on that

11  issue. I recognize the issue is there, and I think it is

12  relevant, but I think it is relevant to the simplification

13  factor that the statute requires me to consider in reviewing

14  the motion that is before me, which is the motion to stay.

15  I have considered in that regard, and I will talk about it a

16  little bit more when I get there in just a moment.

17        I recognize that it may be that that legal issue

18  has been waived by the plaintiffs in these particular CBM

19  reviews but it may not have. Obviously, that is not an

20  issue for me to decide.

21        Even if the issue has not been waived in the

22  current review, it is true that the PTAB has already

23  determined in another covered business method review procedure,

24  the *Versata* case, that Section 101 challenges are a proper

25  basis for a CBM review, and it seems unlikely to me that the

**41**

1   PTAB will change its mind on that point. In part, I say

2   that because there seems to me to be persuasive authority

3   cited by the defendants and by the PTAB in that *Versata*

4   decision that supports a conclusion that 101 challenges are

5   within the scope of the CBM review. And there is also, for

6   what it's worth, strong legislative history I think to

7   support that conclusion.

8         Having said all of that, again, it's not an

9   issue I have to decide. I'm not deciding it. I probably

10  can't decide it because I think the statute says District

11  Courts are not to review a PTAB decision to initiate a CBM

12  proceeding. But I have had to consider all that again to

13  figure out how to deal with it in the context of the

14  statutory test I must apply in making a stay decision.

15        So let me turn now to those factors set out

16  in the statute. The first one being whether a stay will

17  simplify the issues in question and streamline the trial.

18        Here, I find a stay will do that just. It's

19  notable in this regard that all of the asserted claims are the

20  subject of the CBM review that has already been initiated.

21  That is, the PTAB has found that all of the asserted claims

22  are more likely than not or at least with a reasonable

23  likelihood invalid due to the lack of subject matter

24  eligibility. There is a likelihood then that all of the

25  asserted claims will be invalidated. In that instance,

42

1 this case will be simplified to the maximum degree in that
2 the Court will cease to have jurisdiction and it will be
3 dismissed. And by this case, I mean all three of the related
4 cases.
5 Alternatively, if the PTAB changes its view from
6 what it has said preliminarily and finds patentable subject
7 matter, then this case will still be simplified as the Court
8 will not have to resolve the Section 101 defense. The Court
9 is satisfied based on the repeated representations by all of
10 the defendants that they will be estopped from asserting the
11 Section 101 defense. So it bears emphasis here that all of
12 the defendants seek a stay and all of the defendants will be
13 bound by the PTAB's Section 101 decision, whatever it turns
14 out to be.
15 I perceive only one circumstance in which a stay
16 may not yield meaningful simplification for the Court, and
17 that goes back to the issue I started with, the potential
18 threshold issue. This was a hypothetical we discussed. If
19 it turns out that in an appeal from either this CBM review
20 or perhaps another one during the pendency of my stay, if
21 it turns out that there is a definitive legal ruling that
22 Section 101 is not a proper basis for a CBM review, and then
23 you all come back to me and I have to confront the Section
24 101 defense, then the simplification will certainly be
25 substantially reduced. I recognize that risk. But for the

43

1 reasons I started with, I think that risk is relatively
2 small and certainly is not big enough to cause this first
3 factor to disfavor a stay.
4 So putting that all together, I conclude that
5 the first factor, the likely simplification in fact strongly
6 favors a stay.
7 Turning to the second factor, I find that
8 discovery is not complete and the trial date has not been
9 set. More generally, these cases are at an early stage and
10 are far further from completion than CBM reviews likely are.
11 Certainly some amount of speculation is involved here, but I
12 think given what we know, given the regulatory deadlines
13 that are imposed on the PTAB CBM review, given the schedule
14 that is in place in this case right now, it is certainly
15 very likely that if I have not to stay the case, and you
16 were to proceed on parallel tracks, it's very likely that
17 the CBM reviews would finish much sooner than this case or
18 these cases in this court could finish.
19 It's noteworthy the cases do not appear to have
20 materially progressed since the Court denied the first stay
21 request in June. Markman briefing remains months away.
22 While document discovery may be substantially complete, no
23 depositions have been taken, and we haven't gotten to expert
24 discovery yet.
25 The Court has invested resources, that is

44

1 certainly true, not only today but in regard to the earlier
2 motions hearing and in regard to the discovery disputes in
3 regards to scheduling issues. And those have not been
4 insignificant investments, but they also are not enough to
5 cause this factor to disfavor a stay. So given all of that,
6 the second factor in the Court's view strongly favors a
7 stay.
8 I should say I recognize plaintiffs have
9 argued that there has been a pattern of delay exhibited by
10 defendants and that should cause the Court to find the
11 second factor at least weighs against a stay.
12 I'm not persuaded by that argument. To the
13 extent there has been delay, it's not clear to me that it's
14 wholly or even primarily due to the defendants. It seems
15 to me it's the result of decisions taken by both sides,
16 including very laudable decisions to try to see if you can
17 resolve this case or these cases. I don't find any evidence
18 of bad faith.
19 So, again, the second factor strongly favors a
20 stay.
21 So, too, does the third factor. A stay will
22 not, in the Court's view, unduly prejudice plaintiffs or
23 present a clear tactical advantage to the defendants.
24 The plaintiffs do not practice the patents and
25 are not competitors of the defendants.

45

1 I'm not sure if it's being argued any longer but
2 to the extent I certainly was concerned earlier about the
3 impact of a stay on whether there may be licensing efforts
4 ongoing by the plaintiffs, I don't have that concern at the
5 moment because it does seem to me logical that to the extent
6 there is a negative effect on plaintiffs' licensing efforts,
7 that is far more due to the PTAB's decision to initiate a
8 CBM review than my decision today to stay the litigation.
9 Given the relatively short duration that I
10 anticipate the stay being in place, given the speed with
11 which I expect the PTAB to proceed, the risk of evidentiary
12 staleness is small and is further reduced by the fact that
13 document discovery may now be substantially complete.
14 If the patent does survive the CBM review, the
15 plaintiffs will have defeated the 101 defense and what I
16 recognize is its non-chosen forum and it will return to its
17 chosen forum to litigate the remaining issues in the case.
18 And while I think an argument could be made that
19 any PTAB review creates some disadvantage to the plaintiffs,
20 particularly given what may be some uncertainty as to the
21 burden of proof and the likelihood that the burden of proof
22 is not clear and convincing evidence as it is here, so I
23 can certainly see an argument that there is a tactical
24 disadvantage to the plaintiffs to having to have a Section
25 101 fight at the PTAB, I can see that argument but it's

Appendix Page 775

Add. 18

**46**

1 clearly indisputably a direct result of the statute.
2 Congress made that decision so I could not say that the
3 defendants' decision to take advantage of an avenue that
4 Congress clearly gave them presents the clear tactical
5 advantage in a way that should cause the Court to refrain
6 from granting a stay, particularly given the defendants are
7 not eligible to seek PTAB on a CBM unless and until they are
8 sued or threatened with suit.
9     Finally, the fourth factor. The Court finds
10 that the stay will reduce the burden of litigation on the
11 parties and on the Court. I think that follows from all of
12 what I said regarding the other factors.
13     The Court's burden will be reduced due to the very
14 likely and substantial simplification that I anticipate will
15 follow from granting the stay pending the outcome of the CBM
16 review; and the burden will be reduced to the parties during
17 the stay because no litigation will be ongoing and the battle
18 will only be between them at the PTAB and it will be narrowly
19 focused on the 101 issue.
20     Even if the litigation ultimately picks up again
21 in this court sometime down the road, the overall burden of
22 the litigation on the Court and on the parties will not
23 exceed what those burdens would have been in the absence of
24 a stay.
25     So having considered the four factors the

**47**

1 statute requires me to consider, and applying them to the
2 facts in this case, I find that the factors all strongly
3 favor a stay, and it's on that basis that I will grant the
4 stay.
5     I do note a couple other points. I've looked at
6 the legislative history; and this case does not present any
7 need for me to decide what weight to give legislative
8 history because the four factors, as I say, all point
9 strongly EN one direction. But it nonetheless is worth
10 noting that the legislative history seems to very, very
11 strongly favor courts granting a stay in circumstances
12 like this when there is a CBM review under way; and the
13 plaintiffs have not pointed to anything in the legislative
14 history that points in the other direction. And,
15     Finally, the Court's decision today is
16 consistent with Chief Judge Sleet's decision in the
17 *Market-Alerts* case earlier this year.
18     So for all those reasons, I will be entering an
19 order that stays all of these cases pending resolution of
20 U.S. Bancorp's CBM review.
21     Is there any question or anything further we
22 should discuss, Mr. Son?
23     MR. SON: No, Your Honor.
24     THE COURT: Any other defense counsel?
25     MR. GENNARI: No, Your Honor.

**48**

1     MR. LEJA: No, Your Honor.
2     MS. FORT: No, Your Honor.
3     THE COURT: How about plaintiffs?
4     MR. CHAMPION: Nothing from the plaintiffs, Your
5 Honor.
6     THE COURT: Well, safe travels and a happy
7 weekend to all of you. We will be in recess.
8     (Hearing ends at 4:56 p.m.)
9
10     I hereby certify the foregoing is a true and accurate
transcript from my stenographic notes in the proceeding.
11
12     /s/ Brian P. Gaffigan
    Official Court Reporter
13     U.S. District Court

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 27th day of January, 2014, I caused this Brief of

Appellants to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

> Lewis S. Wiener
> Ann G. Fort
> Stephanie G. Stella
> SUTHERLAND ASBILL BRENNAN LLP
> 999 Peachtree Street, NE, Suite 2300
> Atlanta, Georgia  30309
> (202) 383-0140
> lewis.wiener@sutherland.com
> ann.fort@sutherland.com
> stephanie.stella@sutherland.com
>
> Federick L. Cottrell
> RICHARDS LAYTON & FINGER, PA
> One Rodney Square
> 920 North King Street
> Wilmington, Delaware  19801
> (302) 658-6541
> cottrell@rlf.com
>
> *Counsel for Appellee*
>   *Advance America Cash Advance Centers Inc.*
>
> Graham L.W. Day
> POLSINELLI SHUGHART PC
> 100 South Fourth Street
> St. Louis, Missouri  63102
> (314) 622-6609
> gday@polsinelli.com

Christopher M. Coggins
POLSINELLI PC
222 Delaware Avenue, Suite 1101
Wilmington, Delaware  19801
(302) 252-0932
ccoggins@polsinelli.com

Mark T. Deming
POLSINELLI SHUGHART PC
161 North Clark Street, Suite 4200
Chicago, Illinois  60601
(312) 873-3625
mdeming@polsinelli.com

*Counsel for Appellee*
*  CNU Online Holdings, LLC,*
*  FKA Cahs America Net Holdings*

*  Counsel for Appellees*

Upon acceptance by the Clerk of the Court of the electronically filed document, the required number of copies of the Brief of Appellants will be hand filed at the Office of the Clerk, United States Court of Appeals for the Federal Circuit in accordance with the Federal Circuit Rules.

*/s/  Casey L. Griffith*
Casey L. Griffith

*Counsel for Plaintiffs-Appellants*
*Benefit Funding Systems LLC, Retirement*
*Capital Access Management Company LLC*

# CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*3,833*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: January 27, 2014          */s/  Casey L. Griffith*
                                 Casey L. Griffith

                                 *Counsel for Plaintiffs-Appellants*
                                 *Benefit Funding Systems LLC, Retirement*
                                 *Capital Access Management Company LLC*