# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

## 2014-1122

BENEFIT FUNDING SYSTEMS LLC, and
RETIREMENT CAPITAL ACCESS MANAGEMENT COMPANY LLC,

*Plaintiffs-Appellants,*

v.

ADVANCE AMERICA, CASH ADVANCE CENTERS INC. and
CNU ONLINE HOLDINGS, LLC, F/K/A CASH AMERICA NET
HOLDINGS, LLC,

*Defendants-Appellees.*

Appeal from United States District Court for the District of Delaware in
Case No. 1:12-cv-00801-LPS, Judge Leonard P. Stark.

_____

## 2014-1124

BENEFIT FUNDING SYSTEMS LLC, and
RETIREMENT CAPITAL ACCESS MANAGEMENT COMPANY LLC,

*Plaintiffs-Appellants,*

v.

REGIONS FINANCIAL CORPORATION,

*Defendant-Appellee.*

Appeal from United States District Court for the District of Delaware in
Case No. 1:12-cv-00802-LPS, Judge Leonard P. Stark.

_____

## 2014-1125

BENEFIT FUNDING SYSTEMS LLC, and
RETIREMENT CAPITAL ACCESS MANAGEMENT COMPANY LLC,

*Plaintiffs-Appellants,*

v.

U.S. BANCORP,

*Defendant-Appellee.*

Appeal from United States District Court for the District of Delaware in Case No. 1:12-cv-00803-LPS, Judge Leonard P. Stark.

---

## COMBINED RESPONSE BRIEF OF DEFENDANTS-APPELLEES US BANCORP, ADVANCE AMERICA, CASH ADVANCE CENTERS, INC., CNU ONLINE HOLDINGS, LLC (F/K/A CASH AMERICA NET HOLDINGS, LLC), AND REGIONS FINANCIAL CORPORATION

---

Anthony H. Son
Matthew J. Dowd
Ryan M. Corbett
Wiley Rein LLP
1776 K Street NW
Washington, D.C. 20006
(202) 719-7000
*Counsel for Defendant-Appellee U.S. Bancorp*

John A. Leja
Mark T. Deming
Polsinelli PC
161 North Clark Street
Suite 4200
Chicago, IL 60601
(312) 873-3625
*Counsel for Defendant-Appellee CNU Online Holdings, LLC f/k/a Cash America Net Holdings, LLC*

Meredith Martin Addy
Paul A. Gennari
Gretchen P. Miller
Steptoe & Johnson LLP
115 S LaSalle Street, Suite 3100
Chicago, IL 60603
(312) 577-1300
*Counsel for Defendant-Appellee Regions Financial Corporation*

Lewis S. Wiener
Ann G. Fort
Stephanie G. Stella
Sutherland Asbill & Brennan LLP
999 Peachtree Street, NE
Suite 2300
Atlanta, GA 30309
(202) 383-0140
*Counsel for Defendant-Appellee Advance America, Cash Advance Centers, Inc.*

# CERTIFICATE OF INTEREST OF U.S. BANCORP

Counsel for the U.S. Bancorp certifies the following:

1.     The full name of every party or amicus represented by me is:

_____
        U.S. Bancorp

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

_____
        None

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

_____
        None

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

| | |
|---|---|
| Anthony H. Son | Richard L. Horwitz |
| Brian H. Pandya | David Ellis Moore |
| Matthew J. Dowd | Potter Anderson & Corroon LLP |
| Ryan M. Corbett | 1313 N. Market Street |
| Wiley Rein LLP | Hercules Plaza, 6th Floor |
| 1776 K Street NW | Wilmington, DE 19899 |
| Washington, DC 20006 | (302) 984-6000 |
| (202) 719-7000 | |

Date:   April 14, 2014          */s/ Anthony H. Son*
                                Signature of counsel

                                Anthony H. Son
                                Printed name of counsel

## CERTIFICATE OF INTEREST OF REGIONS FINANCIAL CORPORATION

Counsel for the appellee Regions Financial Corporation certifies the following:

1.    The full name of every party or amicus represented by me is:

    Regions Financial Corporation

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    Regions Financial Corporation

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

    Regions Financial Corporation

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

    Steptoe & Johnson LLP – Meredith Martin Addy, John M. Caracappa, Paul A. Gennari, Gretchen P. Miller

    Morris James, LLP – Kenneth Laurence Dorsney


Date:   April 14, 2014          */s/ Meredith Martin Addy*
                                Signature of counsel

                                Meredith Martin Addy
                                Printed name of counsel

## CERTIFICATE OF INTEREST OF
## ADVANCE AMERICA, CASH ADVANCE CENTERS, INC.

Counsel for the appellee Advance America, Cash Advance Centers, Inc. certifies the following:

1. The full name of every party or amicus represented by me is:

Advance America, Cash Advance Centers, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A; Party in caption is real party in interest.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Advance America, Cash Advance Centers, Inc. is a wholly owned subsidiary of Eagle U.S. Sub, Inc. Eagle U.S. Sub, Inc. is a wholly owned subsidiary of Grupo Elektra, S.A.B. de C.V. (a Mexican Corporation). Grupo Elektra, S.A.B. de C.V. is publicly traded on the Bolsa Mexicana de Valores (Mexican Stock Exchange).

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Sutherland Asbill & Brennan, LLP – Ann G. Fort, Lewis D. Wiener, and Stephanie G. Stella; Richards, Layton & Finger, P.A. – Frederick L. Cottrell, III, and Travis S. Hunter; Young Conaway Stargatt & Taylor, LLC – Ann Shea Gaza.

Date: April 14, 2014          */s/ Ann G. Fort*
                              Signature of counsel

                              Ann G. Fort
                              Printed name of counsel

## CERTIFICATE OF INTEREST OF CNU ONLINE HOLDINGS, LLC

Counsel for the appellee CNU Online Holdings, LLC certifies the
following:

1.    The full name of every party or amicus represented by me is:

    CNU Online Holdings, LLC

2.    The name of the real party in interest (if the party named in the
caption is not the real party in interest) represented by me is:

    CNU Online Holdings, LLC

3.    All parent corporations and any publicly held companies that own
10 percent or more of the stock of the party or amicus curiae
represented by me are:

    CNU is a wholly-owned subsidiary of Enova Online Services, Inc.,
    which is a wholly-owned subsidiary of Enova International, Inc.,
    which is a wholly-owned subsidiary of Cash America
    International, Inc., which is a publicly-held corporation.

4.    The names of all law firms and the partners or associates that
appeared for the party or amicus now represented by me in the trial
court or agency or are expected to appear in this court are:

    Polsinell PC – John A. Leja, Graham L.W. Day, Mark T. Deming,
    Robyn H. Ast-Gmoser, Christopher M. Coggins


Date:  April 14, 2014            */s/ John A. Leja*
                                 Signature of counsel

                                 John A. Leja
                                 Printed name of counsel

# TABLE OF CONTENTS

Page

STATEMENT OF RELATED CASES ...................................................... 1

STATEMENT OF THE ISSUE ................................................................ 1

STATEMENT OF THE CASE ................................................................ 2

I.    PROCEDURAL POSTURE OF THE APPEAL ............................... 2

II.   THE FINANCIAL COMPANIES ARE SUED FOR
ALLEGED PATENT INFRINGEMENT ......................................... 3

III.  THE FINANCIAL COMPANIES REQUEST POST-GRANT
CBM REVIEW OF THE ASSERTED PATENT ............................. 6

IV.  THE DISTRICT COURT STAYS THE PATENT
LITIGATION AFTER CONSIDERING THE AIA'S FOUR-
FACTOR TEST ............................................................................. 10

SUMMARY OF THE ARGUMENT ...................................................... 15

ARGUMENT ......................................................................................... 18

I.    STANDARD OF REVIEW .............................................................. 18

    A.   The Permissive Use Of "May" In The Statute Indicates
Deference May Be Applied .................................................... 19

    B.   This Court Generally Applies Abuse Of Discretion
When Reviewing A Stay Order .............................................. 21

    C.   Even Under A *De Novo* Standard, Benefit Funding
Has Not Shown Reversible Error ......................................... 23

II.   BENEFIT FUNDING HAS EITHER WAIVED ITS
ARGUMENT, OR IS ESTOPPED FROM ARGUING, THAT
THE BOARD'S ALLEGED LACK OF AUTHORITY
DEFEATS A STAY ......................................................................... 24

A. Invited Error Prevents Benefit Funding From Basing Its Appeal On The Procedural Correctness Of Section 101 ................................................................................. 24

B. Judicial Estoppel Prevents Benefit Funding From Advancing Its Procedural Section 101 Argument ................ 28

III. UNDER THE FOUR-FACTOR TEST,  THE DISTRICT COURT CORRECTLY STAYED THE LITIGATION ................... 30

A. The District Court Correctly Found That The Stay Will Simplify The Issues And Streamline A Trial ....................... 30

1. A Stay Likely Will Simplify the Issues Regardless of Who Prevails on the CBM Review ............................. 30

2. Supreme Court Activity on the Scope of § 101 Further Supports the Court's Decision to Stay ............. 32

a. Abstract business method patents are not patent-eligible subject matter .............................................. 35

b. The claimed subject matter of the '582 patent is indistinguishable from that of *Bilski* and *Mayo* ..... 36

c. The '582 claims would not withstand this Court's precedent .................................................................. 38

B. Benefit Funding Does Not Challenge The District Court's Finding That The Second Factor "Strongly Favors" A Stay ......................................................................... 43

C. Benefit Funding Does Not Challenge The District Court's Finding That The Third Factor "Strongly Favors" A Stay ......................................................................... 46

D. Benefit Funding Does Not Dispute That A Stay Will Reduce The Litigation Burden On The Parties And The Court ......................................................................................... 49

IV. ALTHOUGH AN ISSUE NOT BEFORE THIS COURT, A CBM REVIEW PERMITS PATENTABILITY CONSIDERATIONS BASED ON § 101 ....................................... 53

A.  This Court Does Not Have Jurisdiction In This Case To Decide Whether The PTO's Decision To Grant Review Was Proper ......................................................................... 53

B.  The Transitional CBM Review Process Was Intended To Include The Threshold Issue Of Whether The Claims Satisfy § 101 .............................................................. 56

    1.  Congress Explicitly Considered Patent Eligibility When Creating CBM Review ........................................ 56

    2.  The AIA Confirms That § 101 is a Proper Basis for CBM Review ................................................................. 59

V.  CONCLUSION ............................................................................ 65

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Accenture Global Services, GmbH v. Guidewire Software, Inc.,*
728 F.3d 1336 (Fed. Cir. 2013) ........................................... 39

*Ajinomoto Co. v. International Trade Commission,*
597 F.3d 1267 (Fed. Cir. 2010) ........................................... 50

*Alice Corp. Pty. Ltd. v. CLS Bank International,*
No. 13-1298 (S. Ct.) .......................................................... 32

*Andersen Consulting v. United States,*
959 F.2d 929 (Fed. Cir. 1992) ............................................ 20

*Aristocrat Technologies Australia Pty Ltd. v.*
*International Game Technology,*
543 F.3d 657 (Fed. Cir. 2008) ............................................ 58

*Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada,*
687 F.3d 1266 (Fed. Cir. 2012) ........................................... 39

*Bechtel Corp. v. Local 215, Laborers' International Union*
*of North America, AFL-CIO,*
544 F.2d 1207 (3d Cir. 1976) ............................................. 33

*Bilski v. Kappos,*
130 S. Ct. 3218 (2010) ............................................... *passim*

*Bonzel v. Pfizer, Inc.,*
439 F.3d 1358 (Fed. Cir. 2006) ........................................... 29

*Boston Scientific Corp. v. Cordis Corp.,*
777 F. Supp. 2d 783 (D. Del. 2011) ..................................... 47

*Chemical Engineering Corp. v. Essef Industries, Inc.,*
795 F.2d 1565 (Fed. Cir. 1986) ..................................... 26, 27

*Cherokee Nation of Oklahoma v. United States*,
    124 F.3d 1413 (Fed. Cir. 1997) ......................................................... 46

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984) .......................................................................... 63

*City of Arlington v. FCC*,
    133 S. Ct. 1863 (2010) ....................................................................... 63

*CLS Bank International v. Alice Corp. Pty. Ltd.*,
    717 F.3d 1269 (Fed. Cir. 2013) (en banc) .................................... 41, 42

*Cooper Notification, Inc. v. Twitter, Inc.*,
    545 Fed. App'x 959 (Fed. Cir. 2013) ................................................. 31

*Cooper Technologies Co. v. Dudas*,
    536 F.3d 1330 (Fed. Cir. 2008) ......................................................... 63

*Corus Staal BV v. United States*,
    502 F.3d 1370 (Fed. Cir. 2007) ......................................................... 43

*CRV Enterprises, Inc. v. United States*,
    626 F.3d 1241 (Fed. Cir. 2010) ......................................................... 28

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011) ......................................................... 39

*Data General Corp. v. Johnson*,
    78 F.3d 1556 (Fed. Cir. 1996) ........................................................... 29

*Dealertrack v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012) .................................................... 38, 58

*Diamond v. Diehr*,
    450 U.S. 175 (1981) .......................................................................... 35

*Forshey v. Principi*,
    284 F.3d 1335 (Fed. Cir. 2002) (en banc) ......................................... 24

*Fort Properties, Inc. v. American Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012) ......................................................... 39

*Function Media L.L.C. v. Google, Inc.*,
   708 F.3d 1310 (Fed. Cir. 2013) ........................................................ 9

*Gottschalk v. Benson*,
   409 U.S. 63 (1972) ....................................................................... 35

*Gould v. Control Laser Corp.*,
   705 F.2d 1340 (Fed. Cir. 1983) ............................................... 21, 32

*Graham v. John Deere Co. of Kansas City*,
   383 U.S. 1 (1966) ......................................................................... 58

*Hewitt v. Helms*,
   459 U.S. 460 (1983) ..................................................................... 20

*In re Comiskey*,
   554 F.3d 967 (Fed. Cir. 2009) ..................................... 39, 58, 59

*In re Miller*,
   666 F.3d 1255 (10th Cir. 2012) ..................................................... 22

*In re Schrader*,
   22 F.3d 290 (Fed. Cir. 1994) ........................................................ 39

*In re Watts*,
   354 F.3d 1362 (Fed. Cir. 2004) .................................................... 56

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
   256 F.3d 1323 (Fed. Cir. 2001) .................................................... 29

*Key Pharmaceuticals v. Hercon Laboratories Corp.*,
   161 F.3d 709 (Fed. Cir. 1998) ............................................. 25, 26, 27

*Krippelz v. Ford Motor Co.*,
   667 F.3d 1261 (Fed. Cir. 2012) .................................................... 32

*Landis v. North American Co.*,
   299 U.S. 248 (1936) ..................................................................... 21

*Market-Alerts Pty. Ltd. v. Bloomberg Financial L.P.*,
   922 F. Supp. 2d 486 (D. Del. 2013) ............................................. 11

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
132 S. Ct. 1289 (2012) ................................................. 35, 36, 37, 38, 42

*Mediterranean Enterprises, Inc. v. Ssangyong Corp.*,
708 F.2d 1458 (9th Cir. 1983) ............................................................ 33

*Mendez v. Puerto Rican International Cos.*,
553 F.3d 709 (3d Cir. 2009) ............................................................... 21

*Merck & Co., Inc. v. Kessler*,
80 F.3d 1543 (Fed. Cir. 1996) ........................................................... 63

*Minnesota Mining & Manufacturing Co. v. Chemque, Inc.*,
303 F.3d 1294 (Fed. Cir. 2002) ......................................................... 29

*MySpace, Inc. v. GraphOn Corp.*,
672 F.3d 1250 (Fed. Cir. 2012) ......................................................... 58

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ........................................................................... 28

*Novosteel SA v. United States*,
284 F.3d 1261 (Fed. Cir. 2002) ......................................................... 44

*Parker v. Flook*,
437 U.S. 584 (1978) ......................................................... 35, 36, 37, 58

*PersonalWeb Technologies, LLC v. Facebook, Inc.*,
No. 5:13-CV-01356-EJD, 2014 WL 116340
(N.D. Cal. Jan. 13, 2014) ................................................................... 32

*Proctor & Gamble Co. v. Kraft Foods Global, Inc.*,
549 F.3d 842 (Fed. Cir. 2008) ........................................................... 21

*Pullman-Standard Co. v. Swint*,
456 U.S. 273 (1982) ........................................................................... 23

*Rensselaer Polytechnic Institute v. Apple Inc.*,
No. 1:13-CV-0633-DEP, 2014 WL 201965
(N.D.N.Y. Jan. 15, 2014) ................................................................... 32

*Research Corp. Technologies, Inc. v. Microsoft Corp.*,
627 F.3d 859, 867-69 (Fed. Cir. 2010) .......................................... 40, 41

*Roberts v. Walters*,
792 F.2d 1109 (Fed. Cir. 1986) ............................................................ 54

*Sage Products, Inc. v. Devon Indus., Inc.*,
126 F.3d 1420 (Fed. Cir. 1997) ............................................................ 24

*SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS,
2013 WL 144255 (D. Del. Jan. 11, 2013) ............................................ 44

*SiRF Technology, Inc. v. International Trade Commission*,
601 F.3d 1319 (Fed. Cir. 2010) .................................................... 40, 41

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944) ............................................................................ 63

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) .................................................... 44, 46

*Softview LLC v. Apple Inc.*, No. 12-989-LPS,
2013 WL 4757831 (D. Del. Sept. 4, 2103) .......................................... 47

*Southwestern Bell Telephone Co. v. Public Utility Commission*,
208 F.3d 475 (5th Cir. 2000) ................................................................ 56

*U.S. Philips Corp. v. Sears Roebuck & Co.*,
55 F.3d 592 (Fed. Cir. 1995) ............................................................... 29

*Ultramercial, Inc. v. Hulu, LLC*,
722 F.3d 1445 (Fed. Cir. 2013) .................................................... 40, 41

*United States v. Ford Motor Co.*,
463 F.3d 1267 (Fed. Cir. 2006) ........................................................... 44

*United States v. L.A. Tucker Truck Lines, Inc.*,
344 U.S. 33 (1952) .............................................................................. 55

*United States v. Rodgers*,
461 U.S. 677 (1983) ............................................................................ 19

*United States v. Rodriguez,*
    602 F.3d 346 (5th Cir. 2010) ............................................................. 25

*Versata Development Group, Inc. v. Lee,*
    No. 2014-1145 (Fed. Cir. filed Dec. 5, 2013) ................................. 1, 64

*VirtualAgility Inc. v. Salesforce.com, Inc.,*
    No. 2014-1232 (Fed. Cir. Filed Jan. 10, 2014) ................................... 1

*Weinar v. Rollform Inc.,*
    744 F.2d 797 (Fed. Cir. 1984) .......................................................... 28

*White v. Department of Justice,*
    328 F.3d 1361 (Fed. Cir. 2003) ................................................... 55, 56

*Zillow, Inc. v. Trulia, Inc.*, No. C12-1549-JLR,
    2013 WL 5530573 (W.D. Wash. Oct. 7, 2013) .............................. 31, 45

**Statutes**

5 U.S.C. § 7703(c) (2012) ........................................................................ 19

8 U.S.C. § 1535(a)(3) (2012) ................................................................... 19

11 U.S.C. § 362 (2012) ............................................................................ 52

28 U.S.C. § 1659(a) (2012) ..................................................................... 52

28 U.S.C. § 2265(c)(3) (2012) ................................................................. 19

35 U.S.C. § 101 (2012) .................................................................. *passim*

35 U.S.C. § 282(b)(2) (2012) ....................................................... 7, 57, 61

35 U.S.C. § 324(e) (Supp. I 2013) .......................................................... 53

35 U.S.C. § 326(a)(11) (Supp. I 2013)............................................ 7, 10, 45

Leahy-Smith America Invents Act ("AIA") § 6(d),
    Pub. L. No. 112–29, 125 Stat. 284 (2011) ................................... 7, 57

AIA § 18 ...................................................................................... 1, 55, 62

AIA § 18(a)(1)(D) ....................................................................... 31

AIA § 18(b) ...................................................................... 10, 54

AIA § 18(b)(1) ............................................................................ 11

AIA § 18(b)(1)(A) ....................................................................... 30

AIA § 18(b)(1)(B) ....................................................................... 43

AIA § 18(b)(1)(C) ....................................................................... 46

AIA § 18(b)(1)(D) ....................................................................... 49

AIA § 18(b)(2) .............................................................. 18, 19, 20

## Federal Rules and Regulatory Materials

37 C.F.R § 42.200(c) (2013) ...................................................... 7

37 C.F.R. § 42.207 (2013) ......................................................... 8

Federal Rule of Civil Procedure 52(a) .................................... 23

*Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents,*
77 Fed. Reg. 48,680 (Aug.14, 2012) ...................................... 61

*Interim Guidance for Determining Subject Matter Eligibility for Process Claims in View of Bilski v. Kappos,*
75 Fed. Reg. 43,922 (July 27, 2010) ...................................... 41

## Other Authorities

157 Cong. Rec. H4480-H4505 (daily ed. June 23, 2011) ........................ 56

157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011) .................... 12, 50, 52, 57

157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) ............................ 7, 10, 51

157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) ........................... 22, 51, 52

157 Cong. Rec. S1367 (daily ed. Mar. 8, 2011) ......................................60

157 Cong. Rec. S1375 (daily ed. Mar. 8, 2011) ......................................60

157 Cong. Rec. S1379 (daily ed. Mar. 8, 2011) ..........................12, 22, 51

157 Cong. Rec. S5370–S5377 (daily ed. Sept. 7, 2011)..........................56

157 Cong. Rec. S5428 (daily ed. Sept. 8, 2011)................................60, 61

Benjamin Graham & David Dodd, *Security Analysis* (1934)................36

Brief for The United States as Amicus Curiae in Support of
    Respondents, *Alice Corp. Pty. Ltd. v. CLS Bank International*,
    No. 13-298, 2014 WL 828034............................................................62

David Kappos, *PTAB and Patentability Challenges*, Sept. 24, 2012,
    *at* http://www.uspto.gov/blog/director/entry/ptab_and_
    patentability_challenges........................................................ 7, 61, 62

H.R. Report No. 112–98 (2011) ......................................................56, 58

Irving Fisher, *The Rate of Interest: Its Nature, Determination and
    Relation to Economic Phenomena* (1907)........................................37

Karl Marx, *Capital, A Critique of Political Economy* (1894).................37

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, counsel for Defendants-Appellees state that pending appeal *VirtualAgility Inc. v. Salesforce.com, Inc.*, No. 2014-1232 (Fed. Cir. filed Jan. 10, 2014), may affect or may be affected by the present appeal.

For the convenience of the Court, Defendants-Appellees further note that *Versata Development Group, Inc. v. Lee*, No. 2014-1145 (Fed. Cir. filed Dec. 5, 2013), might be viewed as an appeal that could affect, or be affected by, the outcome of this case, but only if Plaintiffs-Appellants' presented issues are deemed to be properly before the Court. As explained below, however, Defendants-Appellees submit that those issues need not be decided here, and thus *Versata* neither affects, nor will be affected by, the present appeal.

## STATEMENT OF THE ISSUE

Whether the district court correctly applied the four-factor stay provision in Section 18 of the Leahy-Smith America Invents Act and whether entry of a stay in this case was a "consistent application of established precedent."

## STATEMENT OF THE CASE

## I. PROCEDURAL POSTURE OF THE APPEAL

The present appeal is an interlocutory appeal from three related district court actions, each commenced on June 22, 2012, for alleged patent infringement of U.S. Patent No. 6,625,582 ("the '582 patent"). The district court consolidated the three cases for purposes of scheduling only. (A142–143.)

On March 29, 2013, U.S. Bancorp filed, with the U.S. Patent and Trademark Office ("PTO"), a petition for post-grant review of the '582 patent pursuant to the transitional program for covered business method patents. (A33; A184-227.) This post-grant review is commonly referred to as CBM review. (A1045–1047); *see also* Leahy-Smith America Invents Act ("AIA") § 18, Pub. L. No. 112–29, 125 Stat. 284, 329–31 (2011) (establishing CBM review). Two business days later, on April 2, 2013, U.S. Bancorp filed a motion to stay the litigation. (A33.) Advance America Cash Advance Centers, Inc. ("Advance America") and Regions Financial Corporation filed similar motions to stay on April 5, 2013, and April 8, 2013, respectively. (A47, A62.)[1] The district court

---

[1] Defendant-Appellee CNU Online Holdings, LLC ("CNU") was not added as a party to the case until July 2013, (A49), and therefore did

denied all three motions to stay without prejudice. (A873–876.) The PTO granted U.S. Bancorp's petition on September 20, 2013, (A1015–1029), after which all defendants filed renewed motions to stay the district court litigation, (A36, A53, A65). After a joint hearing on the three motions, the trial court issued the identical oral order in each case, staying each litigation. (A1–4.) Plaintiffs-Appellants Benefit Funding Systems LLC and Retirement Capital Access Management Company LLC (collectively "Benefit Funding") filed notices of appeal for all three actions. (A1399–1402.)

## II. THE FINANCIAL COMPANIES ARE SUED FOR ALLEGED PATENT INFRINGEMENT

Each of Defendants-Appellees (collectively "Financial Companies") is a nationally recognized financial institution. U.S. Bancorp is a financial services holdings company maintaining a principal place of business in Minneapolis, Minnesota. (A125.) U.S. Bancorp owns U.S. Bank National Association, which provides, among numerous other banking products and services, the Checking Account Advance ("CAA") service that Benefit Funding has accused of infringement. (A123–124.)

---

not file a motion to stay in April 2013 with the other Defendants-Appellees.

Advance America is a financial services company organized under the laws of the State of Delaware. (A86.) Advance America offers a variety of financial services, including services marketed as "Online Payday Advance," which Benefit Funding has accused of infringement. (A87.)

Regions Financial Corporation ("Regions") is a multibank holding company based in Birmingham, Alabama. (A105.) Its subsidiary, Regions Bank, provides a full range of financial products and services, including the "Regions Ready Advance" service that Benefit Funding has accused of infringement. (*Id.*)

CNU Online Holdings, LLC f/k/a Cash America Net Holdings, LLC ("CNU") is a financial services company organized under the laws of the State of Delaware. (A916.) CNU provides a variety of financial services, including the "Online Payday Advance" service that Benefit Funding has accused of infringement. (A917.)

On June 22, 2012, Benefit Funding sued the Financial Companies for alleged infringement of the '582 patent. (A29, A43, A58.) According to the '582 patent, the claimed invention "provides a system and method for enabling beneficiaries of retirement benefits to convert future

benefits into current resources to meet current financial and other needs and objectives." (A81, col.8, ll.35–39.) In other words, the '582 patent's system and method "enable[es] recipients of Social Security payments, or of other retirement payments, to convert a designated portion of future payments into current available financial resources." (A78, col.1, ll.54–56.)

Although the '582 patent describes the claimed methods and systems as "computerized," none of the claims recite any specialized computer hardware or software. (*See* A81–84.) Rather, the claims merely recite "computerized" in the preamble. (*Id.*) Further the '582 patent explains that the system "utilizes known computer capabilities and electronic communications links" to carry out the steps of the method. (A78, col.2, ll.30–32.)

Prior to this appeal, the district court litigation had not significantly advanced, reaching only an "early stage." (A16.) The district court originally set an October 14, 2013 deadline for completing fact discovery, but no trial date was ever set. (A151.) Early on, the case was referred to a magistrate judge for mediation, which for U.S. Bancorp occurred February 7, 2013, but was unsuccessful. (A166.)

From March through August 2013, some fact discovery occurred, but no depositions were conducted, the *Markman* process had not begun, and expert discovery had not commenced. (A955.)[2]  In fact, by October 2013, Benefit Funding had not noticed any depositions of any witnesses of the various defendants. (A1244–1245.)

## III. THE FINANCIAL COMPANIES REQUEST POST-GRANT CBM REVIEW OF THE ASSERTED PATENT

On March 29, 2013, shortly after Benefit Funding served its first discovery requests, U.S. Bancorp filed a CBM petition for post-grant review of the '582 patent with the PTO. (A184–227.)  Regions, Advance America, and CNU filed a corresponding CBM petition on October 15, 2013, challenging the same patent claims on the same § 101 grounds as raised in U.S. Bancorp's CBM petition. (A1333–1385.)

CBM review enables a defendant accused of infringing a "covered business method patent" to challenge the validity of the patent by filing a petition with the PTO.  *See* AIA § 18, 125 Stat. at 329–31.  Congress enacted CBM review to "provide a cheaper, faster alternative to district

---

[2] On August 19, 2013, upon the inclusion of CNU as a defendant, the district court issued an amended scheduling order, postponing the relevant discovery and *Markman* dates by approximately five months. (A52.)  The amended scheduling order did not set a trial date. (*Id.*)

court litigation over the validity of business-method patents." 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Charles Schumer). As mandated by statute, the Patent Trial and Appeal Board ("Board") must complete its review and issue a final decision within one year of instituting the review, unless good cause exists for a six-month extension. 35 U.S.C. § 326(a)(11) (Supp. I 2013); *see also* 37 C.F.R § 42.200(c) (2013).

A CBM petition may request to cancel a patent claim "on any ground that could be raised under paragraph (2) or (3) of [35 U.S.C.] section 282(b)." AIA § 6(d), 125 Stat. at 306; *see also* 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Patrick Leahy) ("In [CBM] review, the PTO could consider any challenge that could be heard in court."). As former PTO Director David Kappos stated, "the courts and Congress have indicated quite clearly, in our view, that the PTAB should consider patentability challenges brought under § 101 in post-grant and covered business method reviews." David Kappos, *PTAB and Patentability Challenges*, Sept. 24, 2012, *at* http://www.uspto.gov/blog/director/entry/ptab_and_patentability_challe nges.

The CBM petition requested cancellation of asserted claims 1, 13, 14, 18, 30, and 31 of the '582 patent because the claims recite unpatentable subject matter under 35 U.S.C. § 101. (A216–226.)[3] The petition detailed why the '582 patent claims are directed to the abstract, non-patentable idea of advancing funds based on the present value of future retirement payments. (*Id.*) Moreover, the petition contended that the nominal recitation of a "computerized method" in the preamble cannot render the claims patent-eligible because the computer is not integral to the claimed method. (A221.) Indeed, most if not all of the recited steps can be performed by a human being using pencil and paper, without using a computer at all. (*See* A219.)

A patent owner can respond to the petition before the Board decides whether to institute review of the patent. 37 C.F.R. § 42.207 (2013). Benefit Funding filed such a preliminary response, setting forth its reasons why it believed the challenged claims were limited to patentable subject matter and why the petition for review should be

---

[3] For ease of reference, Defendants-Appellees cite U.S. Bancorp's CBM petition, as the stay being appealed was based only on the institution of that CBM review. The CBM petition filed by the other Defendants-Appellees raised only a challenge under § 101 and advanced, in large part, similar arguments. (*See* A1333.)

denied.  (A1256–1279.)  Benefit Funding specifically argued that the claims did not preempt the abstract idea of advancing funds because the claims contained the limitation that the advance payment was done "without encumbering said beneficiary's right to said future retirement payments and without violating legislated proscriptions in the United States against alienation of future retirement benefits."  (A1267.) Notably, in its preliminary response to the petition, Benefit Funding did not contend that CBM review based on § 101 was outside the Board's authority under the AIA. (*See* A1256–1279.)

The Board considered both the petition and the preliminary response of the patent owner and concluded that it was more likely than not that the challenged claims are not patentable under § 101. (A1016.) The Board thus instituted CBM review of the '582 patent on September 20, 2013. (*Id.*)[4]  The Board issued a scheduling order, which set the final oral argument date for April 1, 2014. (A1281–1286.) Under the

---

[4] Although not in the record because it was decided after this appeal was noticed, the Board also granted the petitions for CBM review of Regions, Advance America, and CNU. The Board's decision is publicly available. *See* https://ptabtrials.uspto.gov, CBM2014-00012, Paper 16. The Court may take judicial notice of the Board's action. *See Function Media, L.L.C. v. Google Inc.*, 708 F.3d 1310, 1316 (Fed. Cir. 2013).

controlling statute, the Board must issue its final decision no later than September 20, 2014, with a possible extension of up to six months for good cause.  35 U.S.C. § 326(a)(11) (Supp. I 2013); (A1016).

## IV.   THE DISTRICT COURT STAYS THE PATENT LITIGATION AFTER CONSIDERING THE AIA'S FOUR-FACTOR TEST

Under the AIA, a party may seek a stay of a patent infringement civil action if the patent is involved in a CBM review.  AIA § 18(b), 125 Stat. at 331.   Congress authorized stays in this instance in order to "provide a cost-efficient alternative to litigation" that avoids "forcing the parties to fight in two fora at the same time."   157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Charles Schumer).  Senator Schumer, who co-authored the amendment to the AIA providing for CMB review, noted that CBM review "should be used instead of, rather than in addition to, civil litigation, [and] . . . [t]o that end, the amendment expressly authorizes a stay of litigation in relation to such proceedings and places a very heavy thumb on the scale in favor of a stay being granted."  *Id.*

When a district court considers a motion for a stay of a patent infringement action involving a patent in a CBM review, the district court "shall decide whether to enter a stay based on" four factors

enumerated in the statute. AIA § 18(b)(1), 125 Stat. at 331. Specifically, the court must consider the following four factors:

(A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;

(B) whether discovery is complete and whether a trial date has been set;

(C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and

(D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

*Id.,* 125 Stat. at 331.

This four-factor test is similar to the traditional analysis courts have applied in determining whether to stay litigation pending *inter partes* or *ex parte* reexamination at the PTO. *See Market-Alerts Pty. Ltd. v. Bloomberg Fin. L.P.*, 922 F. Supp. 2d 486, 489 (D. Del. 2013). The only difference between the four-factor analysis applied to motions to stay pending CBM review and the traditional three-factor test applied in the reexamination context is the inclusion of the fourth factor: whether a stay will reduce the burden of litigation on the parties. *See id.* The four-factor test was adopted "[i]n pursuit of the congressional policy strongly favoring stays when [CBM review]

proceedings are instituted." 157 Cong. Rec. S1379 (daily ed. Mar. 8, 2011) (statement of Sen. Jon Kyl). The fourth factor "places a very heavy thumb on the scale in favor of the stay" such that "it is nearly impossible to imagine a scenario in which a district court would not issue a stay." 157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011) (statement of Sen. Charles Schumer).

Shortly after U.S. Bancorp filed its petition for CBM review, in March 2013 the Financial Companies filed motions to stay the respective district court litigations. (A33, A47, A62.)[5] The district court denied the motions without prejudice. (A873–876.) In doing so, the district court explained that, at that time, the CBM review was "at an even earlier stage than the litigation." (A875.)

When the Board later granted the CBM petition on September 20, 2013, the Financial Companies renewed their motions for stays one week later, on September 27, 2013. (A36, A53, A65.) The court held a combined oral hearing to consider the renewed motions. (A3–26.) All

---

[5] CNU was added as a defendant in July 2013 and thus filed its motion to stay in September 2013 only when the other defendants had renewed their motions. *See infra.*

the Financial Companies participated in the hearing, at the end of which Judge Stark granted the motions to stay. (A17.)

In doing so, the district court found that all four statutory factors strongly favored a stay. (A15–17.) Regarding the first factor, the district court found that a stay would simplify the issues for trial because the claims will either be cancelled by the Board or the Financial Companies would be estopped from raising a § 101 challenge at the district court if the Board were to find the challenged claims to be patent-eligible. (A15–16.) Regarding the second factor, the district court found, for instance, that "these cases are at an early stage and are far further from completion than [the] CBM reviews likely are." (A16.) The district court further noted that "the cases do not appear to have materially progressed since the Court denied the first stay request in June [2013]." (*Id.*)

Regarding the third factor, the district court found that a stay would not unduly prejudice Benefit Funding because Benefit Funding does not practice the patents and is not a competitor of the Financial Companies. (A16.) The district court also found that the previous concerns regarding prejudice were no longer present given that

(1) document production was substantially complete such that the risk of evidentiary staleness is minimal; (2) any negative effects on Benefit Funding's licensing efforts were far more due to the Board's decision to initiate CBM review than any decision to stay the litigation; and (3) having the Board resolve certain invalidity challenges via CBM review was specifically contemplated by Congress and did not present a clear tactical advantage to the Financial Companies. (A16–17.)  The district court also found that the fourth factor strongly favored a stay because the simplification of the issues will reduce the burden on the court and the parties will not be forced to litigate in district court and before the Board.  (A17.)

In response to Benefit Funding's argument that § 101 is not a proper basis for instituting CBM review, Judge Stark noted that he "need not and certainly . . . will not make a decision on that issue." (A15.)  During the combined oral hearing on the renewed motions to stay, counsel for Benefit Funding stated, "I don't know that you have to decide whether a CBM review is proper under [§] 101." (A11.)  Based in part on that representation from Benefit Funding's counsel, Judge Stark reiterated: "[I]t's not an issue I have to decide.  I'm not deciding

it. I probably can't decide it because I think the statute says District Courts are not to review a PTAB decision to initiate a CBM proceeding." (A15.)

These appeals follow.

## SUMMARY OF THE ARGUMENT

Congress intended that district courts would apply the four-factor test set forth in Section 18 of the AIA. Here, the district court correctly applied the four-factor test in staying the district court action. Benefit Funding's interlocutory appeal thus fails for several reasons.

*First*, regardless of the particular standard of review applied to the district court's decision to stay the litigations, the record confirms that the district court did not err in granting a stay. Benefit Funding assumes that *de novo* review applies here, but the AIA provides a flexible standard of review intended to conform to established precedent governing the review of stays issued by district courts. The permissive phrase "may be de novo" must be read in context of the entire provision, which also requires that this Court's review "ensure[s] consistent application of established precedent." Thus, the appropriate deference should be afforded the trial court's factual findings and application of

law.  Even so, the district court's decision should be affirmed even applying a *de novo* standard.  Thus, the Court need not decide the correct interpretation of the standard of review clause.

*Second*, Benefit Funding rests its entire appeal on an issue that it expressly told the district court it did not have to decide.  At the oral argument for the motion to stay, Benefit Funding expressly told the district court that it was not "arguing that a District Court has jurisdiction to make a decision as to whether [§] 101 is within the scope of a PTAB review."  Yet, on appeal, Benefit Funding advances that very issue in its two questions presented, in particular when it asks the Court to decide "[w]hether 35 U.S.C. § 101 is specified . . . as a condition for patentability."  Whether under the invited error doctrine or judicial estoppel, Benefit Funding has waived its ability to press the sole issue upon which it bases its appeal.

*Third*, the district court correctly applied the four-factor test and determined that, on the whole, the factual evidence established that a stay of the litigation was necessary and in accordance with the AIA.  Benefit Funding now ignores the four-factor test and instead argues a single, discrete issue—namely, whether the Board has authority to

review § 101 issues in a CBM review. Benefit Funding thus waives its ability to challenge the numerous factual issues the district court considered when staying the action.

Putting aside Benefit Funding's choice to rely on a single issue for appeal, the district court correctly considered and assessed the entirety of the factual record when it issued a stay. The district court considered the evidence relevant to each of the four factors and correctly found that each of the four factors favors a stay.

*Fourth*, the issue of whether review based on § 101 falls within the scope of CBM review is an issue that need not—and indeed cannot—be decided by either this Court or the district court in this case. Even if a party could challenge the PTO's decision to institute review based on § 101—which it cannot—the proper avenue for challenge would be at the PTO and an appeal from the Board's final written decision in the CBM Review.

As to the merits of Benefit Funding's argument, the correct construction of § 18 of the AIA permits the PTO to review patents under the CBM review process for § 101 compliance. Congress intended the patents that fall within the scope of the "covered business method"

would be challenged through the CBM process. Both the statute's text and its legislative history reflect Congress's plan to ensure that businesses sued for patent infringement based on a business method patent would have a less expensive alternative to district court litigation, particularly for challenging the threshold issue of subject matter eligibility under § 101.

## ARGUMENT

## I.   STANDARD OF REVIEW

The AIA instructs that, with respect to a district court's decision to stay an action based on a CBM review, the "Federal Circuit shall review the district court's decision to ensure consistent application of established precedent, and such review *may* be de novo." AIA § 18(b)(2), 125 Stat. at 331 (emphasis added). In its brief, Benefit Funding makes no specific argument concerning the proper standard of review; instead, Benefit Funding merely recites the above-quoted portion and assumes that all review must be *de novo*. *See* Appellants' Br. at 6.

## A.  The Permissive Use Of "May" In The Statute Indicates Deference May Be Applied

Contrary to Benefit Funding's assumption, the text of the AIA does not compel a *de novo* standard for all issues to be reviewed by this Court in an appeal of a stay.  Rather, the statute expressly provides that the review "may be de novo."  AIA § 18(b)(2), 125 Stat. at 331.  The use of the permissive "may" indicates that *de novo* review is not required.  *United States v. Rodgers*, 461 U.S. 677, 706 (1983) ("The word 'may,' when used in a statute, usually implies some degree of discretion.").  Indeed, Congress knows how to require *de novo* review when it chooses to do so by using the mandatory "shall."  *See* 5 U.S.C. § 7703(c) (2012) ("[I]n the case of discrimination . . . , the employee or applicant shall have the right to have the facts subject to trial de novo by the reviewing court."); 8 U.S.C. § 1535(a)(3) (2012) ("The Court of Appeals shall—(A) review questions of law de novo; and (B) set aside a finding of fact only if such finding was clearly erroneous."); 28 U.S.C. § 2265(c)(3) (2012) ("The determination by the Attorney General regarding whether to certify a State under this section shall be subject to de novo review.").

Indeed, in AIA §18(b)(2) itself, Congress differentiated between the mandatory "shall" and the permissive "may." The text states that the Federal Circuit "shall review the district court's decision to ensure consistent application of established precedent," thus authorizing less discretion. *See Hewitt v. Helms*, 459 U.S. 460, 471–72 (1983) (describing "shall" as mandatory language). In the subsequent clause, however, Congress used the permissive may: "such review may be de novo." That permissive command codifies the settled law, discussed below, in which district courts have wide discretion to authorize stays. *Cf. Andersen Consulting v. United States*, 959 F.2d 929, 932 (Fed. Cir. 1992) (explaining that "[t]he use of the permissive 'may' instead of the mandatory 'shall,' authorizes the [Board of Contract Appeals] to employ its discretion in determining how to handle errors in procurement").

Importantly, the "may be de novo" standard in § 18 must be read in conjunction with the preceding clause, which states that the decision will be reviewed "to ensure consistent application of established precedent." AIA § 18(b)(2), 125 Stat. at 331. This preceding clause codifies Congress's instruction to the Federal Circuit that analogous

precedent should guide the standard of review. That analogous precedent teaches away from a pure *de novo* appellate review.

## B.  This Court Generally Applies Abuse Of Discretion When Reviewing A Stay Order

In general, appellate courts do not routinely review a district court's decision to stay a litigation because such a decision is an interlocutory decision for which there is no right to appeal. *See, e.g., Mendez v. Puerto Rican Int'l Cos.*, 553 F.3d 709, 710 (3d Cir. 2009) ("Stay orders normally are not appealable final orders because they merely delay proceedings in the suit."). Indeed, "[a]n appeal of a stay order, like a mandamus petition . . . , seeks interference by an appellate court with management of proceedings entrusted to the district court." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983).

When reviewing a stay order, this Court and other appellate courts have generally applied a very deferential standard, such as abuse of discretion. *See Proctor & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 845 (Fed. Cir. 2008) ("When jurisdiction is proper, a district court's decision to issue a stay is reviewed for an abuse of discretion."); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in

every court to control the disposition of causes on its docket."); *In re Miller*, 666 F.3d 1255, 1261 (10th Cir. 2012) ("The bankruptcy court's decision whether to grant relief from stay is reviewed for an abuse of discretion."). Thus, to be consistent with precedent, this Court should adopt a standard of review that is faithful to the traditional reviews of stay but modified as necessary to accomplish the purpose of the AIA stay provision.

The legislative history appears to support the permissive standard of review, although there is some ambiguity. One statement by Sen. Schumer indicates that "the Federal Circuit can and should review the district court civil action de novo." 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011). A subsequent statement by Sen. Kyl suggests that the proposed appeal provision was "modified to provide that such review 'may be de novo'"—the language in the enacted statute. 157 Cong. Rec. S1379 (daily ed. Mar. 8, 2011). Sen. Kyle continued: "[W]hether or not every case is reviewed de novo, the court of appeals simply cannot leave the stay decision to the discretion of the district court and allow different outcomes based on the predilections of different trial judges." *Id.* Thus, to the extent the statute is ambiguous, the legislative history

adds some weight to the view that not all review by this Court will be done *de novo*.

## C. Even Under A *De Novo* Standard, Benefit Funding Has Not Shown Reversible Error

That being said, this Court need not decide which standard of review should be applied here. Even under the least deferential *de novo* standard, Benefit Funding has not shown that the district court erred, particularly given Benefit Funding's waiver of numerous issues on appeal, as explained below. If the Court concludes that the particular standard is dispositive, however, the Financial Companies submit that the Court should apply a clearly erroneous standard of review for any factual findings, a *de novo* review for any pure legal questions, and an abuse of discretion standard for the overall question of whether a stay should have issued under the four-factor test. This standard of review would be consistent with precedent and the Federal Rules of Civil Procedure. *Pullman-Standard Co. v. Swint*, 456 U.S. 273, 287 (1982) ("Rule 52(a) . . . does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a court of appeals to accept a district court's findings unless clearly erroneous."); Fed. R. Civ. P. 52(a).

## II. BENEFIT FUNDING HAS EITHER WAIVED ITS ARGUMENT, OR IS ESTOPPED FROM ARGUING, THAT THE BOARD'S ALLEGED LACK OF AUTHORITY DEFEATS A STAY

### A. Invited Error Prevents Benefit Funding From Basing Its Appeal On The Procedural Correctness Of Section 101

Benefit Funding bases its appeal on a single premise—that the Board is not authorized to conduct a CBM review based solely on § 101. Appellants' Br. at 1-2. Benefit Funding, however, has either waived this argument by not raising it before the district court or should be judicially estopped from raising it here.

First, appellate courts generally decline to review an issue raised for the first time on appeal. Courts will generally deem an issue waived if it is raised only for the first time on appeal. *See Forshey v. Principi*, 284 F.3d 1335, 1355 (Fed. Cir. 2002) (en banc) (explaining that generally appellate courts should not hear issues not considered below); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) (stating that barring a few exceptions, the failure to raise an argument at the trial level constitutes a waiver of that argument on appeal).

Within the context of waiver, appeals courts, including this Court, have applied what is known as the "invited error" doctrine. The invited

error doctrine prevents a party from basing an appeal on a purported error by the district court that was solicited by the party itself. *See, e.g., United States v. Rodriguez,* 602 F.3d 346, 350–51 (5th Cir. 2010) ("Review of invited errors is . . . precluded; such errors are reviewed only for 'manifest injustice.'"). "Ordinarily, doctrines of estoppel, waiver, invited error, or the like would prohibit a party from asserting as 'error' a position that it had advocated at the trial." *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 715 (Fed. Cir. 1998); *Chem. Eng'g Corp. v. Essef Indus., Inc.*, 795 F.2d 1565, 1572 (Fed. Cir. 1986) (applying the "invited error" rule).

Here, Benefit Funding's appeal fails because it seeks to reverse an invited error. Benefit Funding explicitly told the district court that the court did not need to decide whether a CBM review can proceed based on § 101.

> THE COURT: Are you arguing that a District Court has jurisdiction to make a decision as to whether 101 is within the scope of a PTAB review?
>
> MR. CHAMPION: Certainly not today. And I don't know that you have to decide that, Judge. In fact, I don't know that you have to decide whether a CBM review is proper under 101. All we're asking today is for a conclusion that Factors 1 and 4 do not favor a stay because of, at least a minimum, the uncertainty around the issue.

(A11.)  The district court agreed and declined to rule on whether a CBM review is proper when based on a § 101 challenge.  (A15.)  In making its oral ruling, the district court explained that, "It's my belief, and I think that is consistent with what the parties have argued, but it's my belief that I need not and certainly I will not make a decision on that issue." (*Id.*)

Having told the district court that this issue was not necessary to decide, Benefit Funding now changes course before this Court.  Benefit Funding presents the following issue: "Whether 35 U.S.C. § 101 is specified in Part II of Title 35, United States Code, as a condition for patentability."  Appellants' Br. at 1.  That issue is the issue Judge Stark asked about at the hearing.  Benefit Funding's response, at that time, was that it was sufficient to assume uncertainty about the scope of review, not that a determination had to be made.  Thus, in direct response to Benefit Funding's argument, Judge Stark declined to answer the very question that Benefit Funding now presents to this Court.

Benefit Funding's invited error is no different than what this Court rejected in *Key Pharmaceuticals* and *Chemical Engineering*.  In

the former case, the defendant-appellant Hercon at trial advanced alternative claim constructions "in an obvious attempt to salvage its invalidity case." *Key Pharms.*, 161 F.3d at 716. The trial court ultimately adopted one of the constructions, and Hercon later claimed error before this Court. *Id.* at 714–15. This Court found "highly questionable Hercon's assertion on appeal that the trial court erred when it adopted the very construction Hercon urged upon the court through the testimony" of its witness. *Id.* at 714. This Court explained that "[t]he impropriety of asserting a position which the trial court adopts and then complaining about it on appeal should be obvious on its face, and litigants hardly need warning not to engage in such conduct." *Id.* at 715.

Similarly, in *Chemical Engineering*, the Court rejected an effort by the appellant Chemical Engineering ("CE") to claim error. 795 F.2d at 1572. CE contended error because the district court relied on certain disclosures as a short-hand description of the accused infringing device, even though CE itself relied on the very same disclosures in court. *Id.* As Chief Judge Markey described it, "CE's allegations are, at best, assertions of invited error about which CE cannot complain on appeal."

*Id.* (citing *Weinar v. Rollform Inc.*, 744 F.2d 797, 805 (Fed. Cir. 1984)). For these reasons, Benefit Funding's current complaint on appeal is nothing more than invited error.

### B. Judicial Estoppel Prevents Benefit Funding From Advancing Its Procedural § 101 Argument

Second, if not waived under the invited error doctrine, then Benefit Funding should be judicially estopped from advancing an argument it jettisoned at the trial court. The equitable doctrine of judicial estoppel "protect[s] the integrity of the judicial process" by "prevent[ing] a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotations omitted). Under judicial estoppel, a court weighs whether "(1) the supposedly contradictory positions are 'clearly inconsistent,' (2) the party succeeded in persuading the lower court of its earlier position, and (3) the party would derive an unfair advantage from the inconsistent advantage." *CRV Enters., Inc. v. United States*, 626 F.3d 1241, 1248 (Fed. Cir. 2010) (quoting *New Hampshire*, 532 U.S. at 750).

For instance, in *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1346 (Fed. Cir. 2001), the Court judicially estopped a party from asserting inconsistent claim constructions. In *Minnesota Mining & Manufacturing Co. v. Chemque, Inc.*, 303 F.3d 1294, 1302 (Fed. Cir. 2002), the Court ruled that judicial estoppel precluded a party from challenging a jury verdict. These and other cases underscore the importance of not permitting an appellant to adopt shifting positions on appeal, particularly when the trial court adopted the argument the party was advancing below. *See Bonzel v. Pfizer, Inc.*, 439 F.3d 1358, 1362–63 (Fed. Cir. 2006); *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996); *U.S. Philips Corp. v. Sears Roebuck & Co.*, 55 F.3d 592, 596 (Fed. Cir. 1995).

In short, whether under invited error or judicial estoppel, Benefit Funding cannot now base its appeal on an issue it told the district court need not be decided. At most, Benefit Funding was arguing that there existed some uncertainty as to whether a CBM review can consider § 101. As explained below, even assuming there is some uncertainty about the scope of CBM review, the district court's grant of a stay must

still be affirmed because the evidence supports the stay and Benefit Funding has chosen not to challenge the numerous factual findings.

## III.  UNDER THE FOUR-FACTOR TEST,  THE DISTRICT COURT CORRECTLY STAYED THE LITIGATION

The district court correctly issued a stay in each of Benefit Funding's infringement suits.  Unlike Benefit Funding's approach on appeal, the district court considered all the evidence presented and concluded that a stay was warranted under a proper application of the four-factor test.   On appeal, Benefit Funding's focus on a single issue cannot demonstrate error in the district court's application of the four-factor test.

### A.  The District Court Correctly Found That The Stay Will Simplify The Issues And Streamline A Trial

#### 1.  A Stay Likely Will Simplify the Issues Regardless of Who Prevails on the CBM Review

The first factor is "whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial."   AIA § 18(b)(1)(A), 125 Stat. at 331.  Here, the district court found that this factor "strongly favors" a stay.  (A16.)   Benefit Funding has not established that this finding was erroneous.

First, the district court recognized that, regardless of whether the PTO cancels or affirms the claims, the issues before the district court will most likely be simplified. The district court understood that Benefit Funding may in fact prevail in the CBM review. (A16.) In that instance, the Financial Companies would be precluded from litigating the invalidity defense based on § 101 in the district court once the stay was lifted. *See* AIA § 18(a)(1)(D), 125 Stat at 330. If Benefit Funding succeeds on the merits in the CBM review—which it presumably thinks it will—then Benefit Funding cannot reasonably argue that the litigation before Judge Stark will not be simplified. Indeed, the invalidity defense based on § 101 will no longer be in the case. *See Zillow, Inc. v. Trulia, Inc.*, No. C12-1549-JLR, 2013 WL 5530573, at *4 (W.D. Wash. Oct. 7, 2013) (noting that the first factor favors stay because prior art raised in CBM review would be "excluded from consideration in . . . litigation").

Second, even if the § 101 patentability challenge is outside the scope of CBM review, the issues will be simplified because the trial court will have the benefit of the PTO's expertise. *Cooper Notification, Inc. v. Twitter, Inc.*, 545 Fed. App'x 959, 965 (Fed. Cir. 2013) (non-

precedential) (explaining that an examiner's reasons for differentiating claims, "while not dispositive, can be helpful in determining the meaning of claim terms"). The CBM review will likely offer useful views on the validity of the claims, just as reexaminations can "provid[e] the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)." *Gould*, 705 F.2d at 1342; *see also Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1266 (Fed. Cir. 2012) ("A patentee's statements during reexamination can be considered during claim construction, in keeping with the doctrine of prosecution disclaimer.").[6]

### 2. Supreme Court Activity on the Scope of § 101 Further Supports the Court's Decision to Stay

The district court's decision to stay the case is further warranted based on the pending Supreme Court case, *Alice Corp. Pty. Ltd. v. CLS Bank International*, No. 13-1298 (S. Ct.). As this Court knows, the

---

[6] District courts have likewise recognized the potential usefulness of a stay. *See, e.g., Rensselaer Polytechnic Inst. v. Apple Inc.*, No. 1:13-CV-0633-DEP, 2014 WL 201965, at *9 (N.D.N.Y. Jan. 15, 2014) (recognizing that the Board's decision and the parties' communications may "provide . . . insights into claim construction"); *PersonalWeb Techs., LLC v. Facebook, Inc.*, No. 5:13-CV-01356-EJD, 2014 WL 116340, at *2 (N.D. Cal. Jan. 13, 2014) ("IPR provides a path to receive expert guidance from the PTO under a more accelerated timeline than the previous inter partes reexamination procedure.").

Supreme Court has undertaken yet again a review of whether business method inventions may qualify for patent protection. Whether the Supreme Court will add any further clarity to existing law is anyone's guess, but the timing of the Supreme Court's review further supports the district court's decision to stay the litigation. *See Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976) ("[A] court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues."); *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."). The Supreme Court will presumably issue its decision by the end of its term in June 2014, and the Board and the district court may then benefit from the Supreme Court's reasoning.

The district court's finding on the simplification for trial should be affirmed for the further reason that, on appeal, Benefit Funding does not challenge the district court's conclusion that the Board will likely

hold the asserted claims to be invalid under § 101. The district court specifically found that "[t]here is a likelihood . . . that all of the asserted claims will be invalidated." (A15.) Benefit Funding offers no retort to this finding below and therefore must accept the district court's finding as an undisputed fact on review here.

Even if reviewed de novo on appeal, however, the record establishes that asserted claims are unlikely to pass muster under § 101. The challenged claims are directed to a business method of a person receiving a financial advance based on a future retirement income stream. (A1021–1022.) The named inventors themselves articulated the abstractness of their claimed "invention" as "provid[ing] a system and method for enabling beneficiaries of retirement benefits to convert future benefits into current resources to meet current financial and other needs and objectives." (A81, col. 8, ll.36–39.)[7]

---

[7] To be clear, because Benefit Funding has not raised this issue on appeal, the Financial Companies provide only a brief overview of why the challenged claims are invalid under 35 U.S.C. § 101. Additional reasons may exist and may be presented in various parts of the record on appeal. (*See, e.g.*, A185–227.)

### a. Abstract business methods are not patent-eligible subject matter

Under current precedent, abstract business methods are not patentable. *See Bilski v. Kappos*, 130 S. Ct. 3218, 3231 (2010). The Court explained that "even if a particular business method fits into the statutory definition of a 'process,' that does not mean that the application claiming that method should be granted." *Id.* at 3229. In concluding that the claims in *Bilski* were not patentable, the Court explained that the guidance at *Gottschalk v. Benson*, 409 U.S. 63 (1972), *Parker v. Flook*, 437 U.S. 584 (1978), and *Diamond v. Diehr*, 450 U.S. 175 (1981), provided the necessary "guideposts" to distinguish patentable subject matter from that which is not patentable. *Bilski*, 130 S. Ct. at 3231.

After *Bilski*, the Supreme Court decided *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012). Although not addressing a business method or computer system, the Court reiterated the understanding that "'post-solution activity' that is purely 'conventional or obvious' . . . 'can[not] transform an unpatentable principle into a patentable process.'" *Id.* at 1299 (quoting *Flook*, 437 U.S. at 589, 590). By highlighting the non-eligible subject matter in

*Flook*, the *Mayo* Court emphasized that simply adding a routine, conventional activity, such as a general computer calculation, to an otherwise abstract idea, would not make the abstract idea any less patent ineligible.  *Mayo*, 132 S. Ct. at 1299–1300 (holding that the claimed diagnostic limitations were not patentable because "[t]hese instructions add nothing specific to the laws of nature other than what is well-understood, routine, conventional activity, previously engaged in by those in the field").

### b. The claimed subject matter of the '582 patent is indistinguishable from that of *Bilski* and *Mayo*

The claimed invention in the '582 patent is indistinguishable from the class of non-patentable subject matter established by *Bilski* and *Mayo*.  At its base, the invention covers a method of providing an advance on future income.  The '582 patent does specify that the amount of money advanced is "based at least in part on present value of a designated portion of said future retirement payments."  (A82, col.9, ll.4–6.)  But a present value calculation of future funds is nothing new. (*See, e.g.*, A79, col.3, ll.45–46 ("utilizing known techniques for calculating present value of a future asset")); *see also* Benjamin Graham & David Dodd, *Security Analysis* 294 (1934) (discussing

present value of a bond); Irving Fisher, *The Rate of Interest: Its Nature, Determination and Relation to Economic Phenomena* 25-27 (1907) (discussing a basic example of the present value of wood grown on an acre of land). Even Karl Marx, in his misguided critique of capitalism, recognized the concept of present value of future income when he referred to "fictitious capital." Karl Marx, *Capital, A Critique of Political Economy, Volume 3* (1894).

To the extent the claims actually require the use of a computer, that addition is nothing more than a "well-understood, routine, conventional activity" the Supreme Court rejected in *Mayo* and *Flook*. Indeed, the inventors themselves acknowledge that the invention "utilizes known computer capabilities." (A78, col.2, ll.30–33.) The '528 patent contains no specific algorithms and discloses no computer code with which one of ordinary skill in the art would be able to implement the claimed methods. The depth of the computerized-aspect of the claimed business method is illustrated by Figure 1, which simply depicts four generic desktop computers somehow possibly interacting with each other:



(A75.)

### c.  The '582 claims would not withstand this Court's precedent

Following the Supreme Court's guidance in Bilski and Mayo, this Court has issued a series of decisions which support the district court's conclusion that the Board is likely to invalidate the challenged claims during the CBM review.  In Dealertrack v. Huber, 674 F.3d 1315, 1333 (Fed. Cir. 2012), the Court held that the phrase "computer aided" did not impose a meaningful limit on the abstract idea because "[t]he claims are silent as to how the computer aids the method, the extent to which a computer aids the method, or the significance of a computer to the

performance of the method." Simply appending "computer aided" to an otherwise abstract business idea did not impart patent eligibility.

In *Bancorp Services, L.L.C. v. Sun Life Assurance Co. of Canada*, 687 F.3d 1266, 1278 (Fed. Cir. 2012), this Court held that using a general purpose computer to perform a method of administering and tracking the value of life insurance policies did not render the method or the claimed system patentable. Similarly, in *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011), the Court held method and systems claims unpatentable because "merely claiming a software implementation of a purely mental process that could otherwise be performed without the use of a computer does not satisfy the machine prong of the . . . test." *See also Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1343 (Fed. Cir. 2013); *Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323–24 (Fed. Cir. 2012) (holding the system claims unpatentable because the patentee "simply added a computer limitation to claims covering an abstract concept—that is, the computer limitation is simply insignificant post-solution activity"); *In re Comiskey*, 554 F.3d 967, 980-81 (Fed. Cir. 2009); *In re Schrader*, 22 F.3d 290, 292–95 (Fed. Cir.

1994) (holding that "a method of competitively bidding on a plurality of related items" was not patentable subject matter).

Moreover, the few decisions upholding as patentable general computerized business methods and systems have focused on the complexity of the claimed methods and the need for a specialized computer to actually carry out the claimed method. Specifically, the Court upheld method and system claims relating to GPS technology in *SiRF Technology, Inc. v. International Trade Commission*, 601 F.3d 1319, 1331–33 (Fed. Cir. 2010), because, in part, the Court was "not dealing with a situation in which there is a method that can be performed without a machine." Likewise, in *Research Corp. Technologies, Inc. v. Microsoft Corp.*, 627 F.3d 859, 867–69 (Fed. Cir. 2010), the Court upheld claims relating to a computerized method of "halftoning" digital images. The Court understood that "[t]he invention presents functional and palpable applications in the field of computer technology." *Id.* at 865; *see also Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1445, 1353 (Fed. Cir. 2013) (observing that "both this court and the Patent Office have long acknowledged that 'improvements thereof'

through interchangeable software or hardware enhancements deserve patent protection").

The claims at issue in the '582 patent are unlike the inventions claimed in *Ultramercial*, *SiRF Technologies*, or *Research Corp.* Each of those cases found patentable subject matter because the computer system was an integral aspect of the claimed invention and required the use of a specialized computer. In the '582 patent, on the other hand, the method of advancing money based on present value can be accomplished by carrying a bag of cash from one person to another. (*See* A78-81, A1025–1027.) Indeed, the PTO's guidelines regarding patentable subject matter confirm that the presence of "general concepts" disembodied from specialized computer equipment is a factor weighing against patent eligibility. *See Interim Guidance for Determining Subject Matter Eligibility for Process Claims in View of Bilski v. Kappos*, 75 Fed. Reg. 43,922, 43,927 (July 27, 2010) (explaining that "[b]asic economic practices or theories" and "[b]asic legal theories," such as contracts and rules of law, factor against patent eligibility).

The Court's split decisions in *CLS Bank* likewise confirm the patent ineligibility of the '582 claims. *CLS Bank Int'l v. Alice Corp. Pty.*

*Ltd.*, 717 F.3d 1269 (Fed. Cir.), *cert. granted*, 134 S. Ct. 734 (2013). Even Judge Moore, who viewed the more complex system claims at issue there as patent eligible, agrees that, "if the machine is mere insignificant post-solution activity or data gathering antecedent to performance of a claimed method, then its incorporation into a claim to an otherwise patent-ineligible abstract idea would not be sufficient to avoid the abstract idea exception to patent-eligibility." *CLS Bank*, 717 F.3d at 1314 (Moore, J., concurring) (citing *Mayo*, 132 S. Ct. at 1301). In the '582 patent, the nominal recitation of "known computer capabilities" to perform a process that could otherwise be performed mentally by a human being fails to render the system claims patent eligible, even under Judge Moore's standard. (*See* A37, col.2, ll.30–33.)

Again, Benefit Funding does not challenge the district court's finding that the challenged claimed will likely fall during the CBM review. Thus, although the record and established precedent confirm the district court's finding, there is no reason to revisit that issue in this appeal.

Finally, the district court was in no position to question or dispute the PTO's reasoned decision that a CBM review can be based on § 101.

As explained below, Benefit Funding's disagreement with the PTO's conclusion about CBM review and § 101 is akin to an impermissible collateral attack on the agency's decision.

At most, the district court could have recognized—and indeed did so—that there might be some possibility that this Court would later decide in a separate case that the Board does not have the authority to review § 101 invalidity contentions in the context of a CBM review. The only relevant point is that the district court recognized the uncertainty, factored it into its analysis, and nonetheless concluded that a stay would likely simplify the issues.

### B.    Benefit Funding Does Not Challenge The District Court's Finding That The Second Factor "Strongly Favors" A Stay

The second factor in the analysis is "whether discovery is complete and whether a trial date has been set."  AIA § 18(b)(1)(B), 125 Stat. at 331.  The district court found that the second factor "strongly favors" a stay.  (A16.)  On appeal, Benefit Funding does not challenge this finding, and its brief is silent on the district court's factual finding concerning the incompleteness of discovery and the lack of a trial date.  Thus, Benefit Funding has waived its ability to dispute the finding that the second factor strongly favors a stay, and this Court need not revisit

the issue. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("Our law is well established that arguments not raised in the opening brief are waived.").[8]

Even if reviewed on appeal, however, the record demonstrates that the district court correctly concluded that the second factor strongly favors granting a stay. The district court characterized that case as still in its early stage. (A16.) The district court understood that, while document production was substantially complete, no depositions had yet been conducted and no expert discovery had occurred. (*Id.*) No trial date has been set. (*Id.*) "*Markman* briefing remain[ed] months away," as the court noted. (*Id.*) Although it had invested resources that "have not been insignificant investments," the court concluded that they were "also not enough to cause this factor to disfavor a stay." (A16); *see also SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS, 2013 WL 144255, at *5–6 (D. Del. Jan. 11, 2013) (finding

---

[8] Moreover, Benefit Funding cannot remedy its decision to waive this issue by addressing it in its reply brief for the first time. *See Corus Staal BV v. United States*, 502 F.3d 1370, 1378 n.4 (Fed. Cir. 2007); *United States v. Ford Motor Co.*, 463 F.3d 1267, 1276 (Fed. Cir. 2006); *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) (holding that an argument is waived if not raised in its opening brief).

that the second factor "squarely favors a stay" where *Markman* hearing, completion of expert discovery, and filing of case dispositive motions are months away and a trial date has not been set); *Zillow*, 2013 WL 5530573, at *8 (noting that the second factor favored a stay even though discovery was ongoing, the parties had exchanged proposed claim constructions, and a trial date was set).

Also weighing in favor of the stay was the speed with which the CBM would proceed. By statute, the Board must complete its review and issue a decision on the merits within one year of instituting CBM review. *See* 35 U.S.C. § 326(a)(11) (Supp. I 2013). Indeed, on April 1, 2014, the Board conducted the final hearing on the merits of whether the challenged claims of the '582 patent satisfy § 101's requirement of patentability. (A1245.) The Board's final decision is expected by September 20, 2014. *See* 35 U.S.C. § 326(a)(11) (Supp. I 2013).

Finally, the district court rejected Benefit Funding's argument that the Financial Companies had exhibited a "pattern of delay." (A16.) Benefit Funding had suggested that the Financial Companies had intentionally delayed the progress of the litigation. (*Id.*) According to Benefit Funding then, the stay request should have been rejected. But

the district court saw through this argument, observing instead that any delay was due in part to "very laudable decisions" by both sides in an attempt to resolve the cases. (*Id.*)

### C. Benefit Funding Does Not Challenge The District Court's Finding That The Third Factor "Strongly Favors" A Stay

The third factor is "whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party." AIA § 18(b)(1)(C), 125 Stat. at 331. Again, nowhere in its brief does Benefit Funding challenge the district court's findings on this issue. Thus, Benefit Funding has waived its ability to challenge the district court's finding that the third factor "strongly favors" a stay. *See SmithKline Beecham*, 439 F.3d at 1319.

Even examining the evidence *de novo* on appeal, it is apparent that the district court correctly ruled that a stay would not unduly prejudice Benefit Funding or present a clear tactical advantage to the defendants. The district court also found that a short duration of the stay will not create the potential for any evidentiary staleness. (A16.) Whenever litigation is delayed, a court should be concerned about the decay of evidence, as documents can get lost or witnesses' memories may fade. *See Cherokee Nation of Okla. v. United States*, 124 F.3d

1413, 1418 (Fed. Cir. 1997) (explaining that a decision to stay a case should consider the effects of passage of time, such as fading witness memories).  Here, however, the district court explained that the speed with which the CBM review will proceed weighs against any potential concerns about evidence preservation.  (A16.)  The court also noted that "the risk of evidentiary staleness is small and is further reduced by the fact that document discovery may now be substantially complete." (*Id.*)

As the district court explained, Benefit Funding does not practice the patent.  (*Id.*)  Nor is Benefit Funding a competitor of any of the Financial Companies.  (*Id.*)  Benefit Funding is a non-practicing entity, so a slight delay in the litigation will not harm any operational business.  *See Softview LLC v. Apple Inc.*, No. 12-989-LPS, 2013 WL 4757831, at *1 (D. Del. Sept. 4, 2103) (finding that a stay would not severely prejudice the non-practicing patent owner); *cf. Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789–90 (D. Del. 2011) ("Courts are generally reluctant to stay proceedings where the parties are direct competitors.").

Also found by the district court was the lack of any negative impact on Benefit Funding's licensing efforts attributable to the stay

decision. (A16.) Benefit Funding had complained that a stay would negatively affect its efforts to license the '582 patent. (*Id.*) The district court properly rejected this argument, (*id.*), and Benefit Funding does not renew it here. In any event, the district court correctly concluded that any negative impact on the licensing efforts would be due, not to the stay, but to the Board's decision to initiate CBM review of the patent. (*Id.*) There is no reason to disturb this finding.

Further, Benefit Funding failed to advance the litigation and thus cannot complain of prejudice due to a purported loss of chosen forum. (*See id.*) In the six-month period from when the Financial Companies originally filed their motions to stay in April 2013 until the hearing in October 2013, Benefit Funding served no discovery requests or deposition notices and did not depose a single witness. (A955.)

Importantly, the district court understood that any tactical advantage is "clearly indisputably a direct result of the statute." (A16.) In other words, to the extent that Benefit Funding experienced some prejudice caused by the stay or to the extent that the Financial Companies gained a benefit, that result was the inevitable result of the

CBM review. (*Id.*) Thus, any such effect was a congressional policy choice which the district court was not positioned to disrupt.

In sum, Benefit Funding does not challenge any of the factual findings relevant to the third factor. Benefit Funding must therefore accept the district court's finding that the third factor weighs strongly in favor of a stay. Even so, putting aside Benefit Funding's waiver, the district court correctly ruled that a stay would not unduly prejudice Benefit Funding and that a stay did not present a clear tactical advantage to the Financial Companies.

### D. Benefit Funding Does Not Dispute That A Stay Will Reduce The Litigation Burden On The Parties And The Court

The fourth factor asks "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." AIA § 18(b)(1)(D), 125 Stat. at 331. Here, the district court found that this factor also favors a stay because the stay will necessarily reduce the litigation burden.

As a first point, Benefit Funding does not directly address this issue in its brief. The only reference to the fourth factor appears when Benefit Funding states that "a stay will increase—not decrease—the burden of litigation." Appellants' Br. at 5. That single, conclusory

sentence does not preserve an issue for appeal. *See Ajinomoto Co. v. Int'l Trade Comm'n*, 597 F.3d 1267, 1278 (Fed. Cir. 2010) (holding that a single sentence "unaccompanied by developed argumentation" fails to preserve an issue on appeal). Thus, to the extent that the fourth factor considers facts beyond the authority of the Board to review § 101 issues, Benefit Funding has waived its challenge to those factual findings.

The district court agreed with the Financial Companies that the fourth factor favored a stay. (A17.) Concluding that the evidence of record established that a stay would reduce the burden of litigation, the district court explained that its conclusion "follow[ed] from all that [it] said regarding the other factors." (*Id.*)

Furthermore, AIA's legislative history confirms that Congress intended the fourth factor to be an independent lever to ensure that the purpose of the stay is realized. Senator Charles Schumer explained that "it is nearly impossible to imagine a scenario in which a district court would not issue a stay." 157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011). In his view, a stay would be the expectation "unless there were an extraordinary and extremely rare set of circumstances not contemplated in any of the existing case law related to stays pending

reexamination." 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer). "Absent some exceptional circumstance, the institution of a business-methods proceeding—which requires a high up-front showing and will be completed in a relatively short period of time—should serve as a substitute for litigation, and result in a stay of co-pending district court litigation." *Id.* at S1364.

The district court further appreciated this legislative history. In concluding its ruling, the court stated that "the legislative history seems to very, very strongly favor courts granting a stay in circumstances like this when there is a CBM review under way." (A17.) The court also noted that Benefit Funding had "not pointed to anything in the legislative history that points in the other direction." (*Id.*) The court's analysis comports with Sen. Schumer's expectation that "district judges will liberally grant stays of litigation once a proceeding is instituted." 157 Cong. Rec. S1379 (daily ed. Mar. 8, 2011).

Benefit Funding incorrectly argued to the district court that the fourth factor is simply a reiteration of the first factor. (*See* A1118.) In doing so, Benefit Funding ignored the legislative history that explains the independent purpose of the fourth factor. Congress expressly chose

a four-factor test because the "test properly emphasizes a fourth factor that is often ignored by the courts: 'whether a stay will reduce the burden of litigation on the parties and on the court.'" 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011). Sen. Schumer explained that "[t]oo many district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing the parties to fight in two fora at the same time." *Id.* The strong bias towards granting a stay is "the fundamental purpose of the Schumer-Kyl amendment to provide a cost-efficient alternative to litigation." *Id.*

Thus, in adding this fourth factor, Congress enacted what could be viewed as a *per se* stay of the district court patent infringement action when the patent is subject to CBM review. Congress did not make the stay automatic, as it did when there is a concurrent investigation before the U.S. International Trade Commission, *see* 28 U.S.C. § 1659(a), or when there is a bankruptcy proceeding, *see* 11 U.S.C. § 362. But the clear congressional intent of the AIA's fourth factor is to provide a "very heavy thumb on the scale in favor of the stay." 157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011) (statement of Sen. Charles Schumer). In any event, this analysis of the fourth factor is unnecessary, as Benefit

Funding has decided not to dispute the district court's finding and has thus waived this issue on appeal.

## IV. ALTHOUGH AN ISSUE NOT BEFORE THIS COURT, A CBM REVIEW PERMITS PATENTABILITY CONSIDERATIONS BASED ON § 101

In this case, neither this Court nor the district court has the jurisdiction to decide the propriety of the PTO's decision to institute the CBM review. If it is judicially reviewable at all, the appropriate vehicle might be an appeal from the final written decision from the CBM review or an action against the PTO under the Administrative Procedure Act. Nevertheless, if a court were to consider whether CBM review based on § 101 is permissible, the court should properly hold that it is.

### A. This Court Does Not Have Jurisdiction In This Case To Decide Whether The PTO's Decision To Grant Review Was Proper

As presented, this case does not offer the Court the opportunity to answer the question Benefit Funding presents. As a first point, Congress has explicitly precluded judicial review of the PTO's decision to institute and conduct CBM review. 35 U.S.C. § 324(e) (Supp. I 2013) ("The determination by the Director whether to institute a post-grant

review under this section shall be final and nonappealable."). Congress has therefore concluded that a party shall not have the right to separately appeal the merits of the PTO's decision to grant a petition for CBM review. This is not unlike other situations in which Congress has expressly denied an appeal right of an agency's decision to institute an action. *See, e.g.*, *Roberts v. Walters*, 792 F.2d 1109, 1111 (Fed. Cir. 1986) (noting statutory bar to judicial review of decisions by Veterans Administration).

Of course, Congress's decision to preclude appeal of the PTO's initial decision may not necessarily mean that the patent owner is forever precluded from arguing that the PTO improperly instituted a CBM review. Benefit Funding may be able to challenge the PTO's basis for cancelling claims based on § 101 by appealing the Board's final decision, should it be adverse to Benefit Funding. During that appeal, Benefit Funding might challenge the Board's authority. The important point here, however, is that such a challenge, if possible, must be raised in the context of a direct appeal of the Board's final decision—not through a collateral attack by way of an opposition to a motion to stay a district court litigation pursuant to § 18(b) of the AIA.

Importantly, Benefit Funding's possible waiver of the § 101 issue is yet another reason why the district court's ruling was correct under any standard of review. When Benefit Funding responded to the petition for CBM review in its preliminary response, Benefit Funding did not dispute the PTO's authority to institute review based on § 101. (A1257–1279.) Instead, Benefit Funding responded solely to the merits of the CBM petition, arguing that the challenged claims constituted patentable subject matter under § 101. (A1266–1278.) The PTO considered Benefit Funding's response on the merits, yet decided to institute the CBM review. (A1015.)

Benefit Funding's failure to address the PTO's authority when it first had a chance is a further reason why the collateral attack on the PTO's authority is misplaced and cannot defeat a stay. *See United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); *White v. Dep't of Justice*, 328 F.3d 1361, 1372

(Fed. Cir. 2003) (deeming argument waived for failing to raise issue before arbitrator); *In re Watts*, 354 F.3d 1362, 1367–68 (Fed. Cir. 2004); *Sw. Bell Tel. Co. v. Pub. Util. Comm'n*, 208 F.3d 475, 487 (5th Cir. 2000) ("The failure to raise an issue at the administrative level waives the right to appellate review of that issue.").[9]

### B. The Transitional CBM Review Process Was Intended To Include The Threshold Issue Of Whether The Claims Satisfy § 101

#### 1. Congress Explicitly Considered Patent Eligibility When Creating CBM Review

When Congress was considering H.R. 1249 and S. 23, the bills that eventually became the AIA, the issues of business method patents and patentable subject matter were at the forefront of the discussions. *See, e.g.*, 157 Cong. Rec. H4480–H4505 (daily ed. June 23, 2011); 157 Cong. Rec. S5370–S5377 (daily ed. Sept. 7, 2011); H.R. Rep. No. 112–98, at 54, 162 (2011), *reprinted in* 2011 U.S.C.C.A.N 67, 84–85, 110. Indeed, Sen. Schumer asserted that "[b]usiness method patents are anathema to the protection the patent system provides because they

---

[9] Benefit Funding did ultimately raise its objection to the Board's authority but only after the Board instituted CBM review, and after the district court granted Defendants-Appellees' motions to stay. *See* https://ptabtrials.uspto.gov/, CBM2013-00014, Paper No. 19.

apply not to novel products or services but to abstract and common concepts of how to do business."  157 Cong. Rec. S1053 (daily ed. Mar. 1, 2011).  Whether all business method related patents are anathema is debatable, but the legislative history makes clear that the abstractness problem associated with business method patents was a driving force behind aspects of the AIA, along with Congress's view that the Supreme Court's decision in *Bilski* had not solved the problem.

To that end, Congress established the CBM review procedure. AIA § 18, 125 Stat. at 329–331.  Congress authorized CBM review based on any ground that could be raised under 35 U.S.C. § 282(b)(2) or (3).  AIA § 6(d), 125 Stat. at 306 (amending 35 U.S.C. § 321).  Section 282(b)(2) of Title 35 authorizes an invalidity defense based 'on any ground specified in part II of this title as a condition for patentability." By authorizing review based on a "condition for patentability," Congress necessarily authorized review for subject matter eligibility compliance under § 101.

Benefit Funding relies on the mistaken premise that subject matter eligibility is not a "condition for patentability."  Appellants' Br. at 7-8.  The Supreme Court has understood § 101 to be one of the

conditions for patentability. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 12 (1966); *see also Bilski*, 130 S. Ct. at 3236 (Stevens, J., concurring) ("Section 101 imposes a threshold condition."). This Court has similarly recognized that § 101 is a condition for patentability. *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 543 F.3d 657, 661 (Fed. Cir. 2008) ("It has long been understood that the Patent Act sets out the conditions for patentability in three sections: sections 101, 102, and 103."); *see also Dealertrack*, 674 F.3d at 1330 n.3 ("[T]he defenses provided in the statute, § 282, include not only the conditions of patentability in §§ 102 and 103, but also those in § 101."). *But see MySpace, Inc. v. GraphOn Corp.*, 672 F.3d 1250, 1260 (Fed. Cir. 2012).

Indeed, both this Court and the Supreme Court have viewed the § 101 issue as a threshold issue to be decided before assessing novelty and nonobviousness. *See Bilski*, 130 S. Ct. at 3225 (describing the § 101 issue as a "threshold test"); *Flook*, 437 U.S. at 593 (noting that "[t]he obligation to determine what type of discovery is sought to be patented must precede the determination of whether that discovery is, in fact, new or obvious"); *Comiskey*, 554 F.3d at 973 ("Only if the requirements of § 101 are satisfied is the inventor allowed to pass through to the

other requirements for patentability, such as novelty under § 102 and
. . . non-obviousness under § 103"). During the time preceding the
passage of the AIA, Congress expressed substantial concern about
abstract business method patents. *See* H.R. Rep. No. 112–98, at 54
(2011), *reprinted in* 2011 U.S.C.C.A.N. 67, 84 (noting the "issuance of
poor business-method patents during the late 1990's through the early
2000's [that] led to the patent 'troll' lawsuits" and explaining that the
AIA "responds to the problem by creating" CBM review). It would be
odd, to say the least, for the Board to be prohibited from assessing the
threshold issue of § 101 in a post-grant review proceeding designed to
remedy the problem of abstract business method patents.

### 2. The AIA Confirms That § 101 is a Proper Basis for CBM Review

The AIA's legislative history also confirms that § 101 is a proper
basis for CBM review. Indeed, Congress designed the CBM review
process specifically to address what was seen as a failure of the law
governing abstract business methods.

> In its 1998 *State Street* decision, the Federal Circuit greatly
> broadened the patenting of business methods. Recent court
> decisions, culminating in last year's Supreme Court decision
> in *Bilski v. Kappos*, have sharply pulled back on the
> patenting of business methods, emphasizing that these

"inventions" are too abstract to be patentable. In the intervening years, however, PTO was forced to issue a large number of business-method patents, many or possibly all of which are no longer valid. The Schumer[-Kyl] proceeding offers a relatively cheap alternative to civil litigation for challenging these patents, and will reduce the burden on the courts of dealing with the backwash of invalid business-method patents.

157 Cong. Rec. S1367 (daily ed. Mar. 8, 2011).

Senator Kyl reaffirmed Congress's intent to include § 101 challenges in CBM reviews, noting that the "more likely than not invalid" standard applies to "issues that can be raised in post-grant review, such as enablement and section 101 invention issues." 157 Cong. Rec. S1375 (daily ed. Mar. 8, 2011).

Senators Kyl and Schumer were not alone in their view. In one debate of the then-pending bill, Sen. Pryor stated: "As I understand it, Section 18 is intended to enable the PTO to weed out improperly issued patents for abstract methods of doing business." 157 Cong. Rec. S5428 (daily ed. Sept. 8, 2011). In response, Sen. Leahy confirmed this view: "As in other post-grant proceedings, the claims should typically be evaluated to determine whether they, among other things, meet the enablement and written description requirements of the act, and contain patentable subject matter under the standards defined in the

statutes, case law, and as explained in relevant USPTO guidance." 157 Cong. Rec. S5428 (daily ed. Sept. 8, 2011). Thus, Senators Pryor and Leahy knew that CBM review would tackle the problem of abstract business methods by reviewing compliance with § 101.

Moreover, the PTO's view of the § 101 issue conforms to the courts' prior guidance. During the rulemaking process, the PTO further explained that "a petitioner in a covered business method patent review may request to cancel as unpatentable one or more claims of a patent on any ground that could be raised under 35 U.S.C. [§] 282(b)(2) or (3) (relating to invalidity of the patent or any claim)." *Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents*, 77 Fed. Reg. 48,680, 48,687 (Aug. 14, 2012). At the time of the rulemaking, there was little doubt § 101 would be the basis for the invalidity of a patent claim in CBM review.

Former Director of the PTO David Kappos reaffirmed the PTO's position in a written explanation of why the agency determined that a CBM review can be based on § 101. David Kappos, *PTAB and Patentability Challenges*, Sept. 24, 2012, *available at*

http://www.uspto.gov/blog/director/entry/ptab_and_patentability_challenges. Director Kappos concluded that "the courts and Congress have indicated quite clearly, in our view, that the PTAB should consider patentability challenges brought under § 101 in post-grant and covered business method reviews." *Id.*

Furthermore, the Solicitor General has advanced the same understanding on behalf of the United States as *amicus curiae* in the *CLS Bank* case pending at the Supreme Court. *Brief for the United States as Amicus Curiae in Support of Respondents, Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, No. 13-298, (U.S. filed Feb. 26, 2014), 2014 WL 828034. Specifically, the Solicitor General wrote that, "[i]n particular, the bill's sponsors anticipated that non-technological business-method patents would be subject to eligibility challenges under *Bilski*, and they emphasized that the CBM Program would provide a forum for those challenges." *Id.* at 18-19. The unambiguous position of both the PTO and the United States is that a CBM review can proceed based on a § 101 challenge.

A further point overlooked by Benefit Funding is that, even if the statute were ambiguous, the PTO's interpretation of AIA § 18 would

likely be afforded at least some deference. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134, 139 (1944); *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1343 (Fed. Cir. 2008) (affording *Chevron* deference to the PTO's interpretation of "original application" as used in the *inter partes* reexamination provisions of the American Inventors Protection Act of 1999); *Merck & Co., Inc. v. Kessler*, 80 F.3d 1543, 1550 (Fed. Cir. 1996) (granting deference to the PTO's interpretation of the URAA based not on *Chevron* but on "the thoroughness of its consideration and the validity of its reasoning"). In its brief to this Court, Benefit Funding fails to recognize that the deciding court would likely give some deference to the PTO's interpretation. Whether *Chevron* or *Skidmore* deference would apply, the PTO's view of the law is yet another reason to affirm the district court's issuance of a stay.[10]

Of course, the proper scope of CBM review was but one small aspect of the multi-faceted analysis before the district court. The Court

---

[10] Further, the PTO's interpretation would likely be afforded *Chevron* deference. *See City of Arlington v. FCC*, 133 S. Ct. 1863, 1874 (2010) (holding that an agency's interpretation of a statutory ambiguity that concerns the scope of its regulatory authority, *i.e.*, its jurisdiction, is entitled to *Chevron* deference)

is not being asked to determine whether § 101 can be a basis for CBM review. Instead, the issue is whether a stay was warranted under the four factors. The statutory construction analysis establishes that the district court had a strong basis to find that the PTO was likely correct in granting CBM review based on § 101, and therefore there was a high likelihood that the issues would be simplified with a stay.

In sum, Benefit Funding has attempted to transform this appeal of a stay decision into an APA-type challenge to the Board's authority to consider § 101 issues under the CBM review process. While this Court may well decide that issue in another case, *see Versata Dev. Group, Inc. v. Lee*, No. 2014-1145 (Fed. Cir. filed Dec. 5, 2013), the issue is not properly raised in the present appeal. All that is in question here is whether the district court properly relied on, as one of multiple factors, the Board's assessment of its own authority to review patent eligibility under § 101 in the context of a CBM review. Even if the PTO were ultimately proved wrong, it does not follow that the district court's conclusion that the claims are likely to be invalidated under CBM review was wrong. The district court's analysis was correct, and its decision should be affirmed.

## V.  CONCLUSION

For the above reasons, Defendants-Appellees request that the Court affirm the district court's issuance of a stay.

Respectfully submitted,

Date: <u>April 14, 2014</u>

<u>/s/John A. Leja</u>
John A. Leja
Mark T. Deming
Polsinelli PC
161 North Clark Street
Suite 4200
Chicago, IL  60601
(312) 873-3625
*Counsel for Defendant-Appellee*
*CNU Online Holdings, LLC*
*f/k/a Cash America Net*
*Holdings, LLC*


<u>/s/Meredith Martin Addy</u>
Meredith Martin Addy
Paul A. Gennari
Gretchen P. Miller
Steptoe & Johnson LLP
115 S LaSalle Street,
Suite 3100
Chicago, IL 60603
(312) 577-1300
*Counsel for Defendant-Appellee*
*Regions Financial Corporation*

<u>/s/ Anthony H. Son</u>
Anthony H. Son
Matthew J. Dowd
Ryan H. Corbett
Wiley Rein LLP
1776 K Street NW
Washington, D.C. 20006
(202) 719-7000
*Counsel for Defendant-Appellee*
*U.S. Bancorp*


<u>/s/Ann G. Fort</u>
Lewis S. Wiener
Ann G. Fort
Stephanie G. Stella
Sutherland Asbill & Brennan
LLP
999 Peachtree Street, NE
Suite 2300
Atlanta, GA  30309
(202) 383-0140
*Counsel for Defendant-Appellee*
*Advance America, Cash*
*Advance Centers, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, April 14, 2014, the foregoing COMBINED RESPONSE BRIEF was electronically filed and therefore served electronically via the court's ECF/CM system all counsel of record.

*/s/ Matthew J. Dowd*

Matthew J. Dowd

Dated: April 14, 2014

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e). The brief contains 13,021 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared using Microsoft Word in Century, a proportionally spaced typeface, and 14-point size font.

*/s/ Matthew J. Dowd*

Matthew J. Dowd

Wiley Rein LLP
*Counsel for Defendant-Appellee*